We affirm the judgment of the circuit court denying the petition for writ of error coram nobis.
In 1977, Edward Horsley was convicted for the capital offense involving a robbery and an intentional killing and was sentenced to death. That conviction and sentence were affirmed on appeal by the Alabama appellate courts. Horsley v. State,374 So.2d 363 (Ala.Cr.App. 1978), affirmed, Ex parte Horsley,374 So.2d 375 (Ala. 1979). The United States Supreme Court vacated the affirmance and remanded for further consideration in light of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382,65 L.Ed.2d 392 (1980). Horsley v. Alabama, 448 U.S. 903,100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980). On remand, the Alabama Supreme Court remanded to this Court, Ex parte Horsley, 409 So.2d 1347
(Ala.Cr.App. 1981), which then reversed on authority of Beck v.State, 396 So.2d 645 (Ala. 1980). Horsley v. State,409 So.2d 1347 (Ala.Cr.App. 1981). Although the Alabama Supreme Court denied certiorari, the United States Supreme Court vacated the reversal and remanded the case on authority of Hopper v. Evans,456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Alabama v.Horsley, 457 U.S. 1114, 102 S.Ct. 2921, 73 L.Ed.2d 1326 (1982). On remand, Horsley's conviction and sentence were affirmed.Horsley v. State, 476 So.2d 623 (Ala.Cr.App. 1983), affirmed,Ex parte Horsley, 476 So.2d 626 (Ala. 1985). The United States Supreme Court denied certiorari. Horsley v. Alabama,475 U.S. 1031, 106 S.Ct. 1239, 89 L.Ed.2d 347 (1986).
In 1986, Horsley filed a petition for writ of error coram nobis. That petition was amended once before and once after the evidentiary hearing which was held. In 1987, the circuit court denied the petition. This appeal is from that denial. Four issues are presented.
 I
Horsley claims that "the State committed blatant acts of race discrimination by striking all eight Black jurors from the venire," Appellant's brief at 7, and that his constitutional rights under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), and Ex parte Jackson, 516 So.2d 768 (Ala. 1986), were violated. At trial, there was no objection to the prosecution's peremptory jury strikes. This issue was not raised on appeal. The claim of racial discrimination in the selection was first advanced in any form in the coram nobis petition.
Horsley's direct appeal was final on February 24, 1986, when the United States Supreme Court declined to review his case.Horsley v. Alabama, 475 U.S. 1031, 106 S.Ct. 1239,89 L.Ed.2d 347 (1986). Batson was decided April 30, 1986. Jackson was decided December 19, 1986. In Allen v. Hardy, 478 U.S. 255,106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the United States Supreme Court held that its decision in Batson should not be applied retroactively on *Page 1357 
collateral review of convictions that became final beforeBatson was decided. That decision was followed by the Alabama Supreme Court in Ex parte Love, 507 So.2d 979 (Ala. 1987). BothBatson and Jackson apply only to cases pending on direct review or not yet final. Ex parte Watkins, 509 So.2d 1074, 1076
(Ala.), cert denied, Watkins v. Alabama, ___ U.S. ___,108 S.Ct. 269, 98 L.Ed.2d 226 (1987). See also Griffith v.Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987);Ex parte Branch, 526 So.2d 609 (Ala. 1987).
In Procter v. Butler, 831 F.2d 1251 (5th Cir. 1987), a similar issue was addressed:
 "Procter's second argument is that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) entitles him to an evidentiary hearing to determine whether the prosecution unconstitutionally used its peremptory challenges to exclude blacks from the jury at his trial. Under Batson, when the defendant produces evidence raising the inference of purposeful racial discrimination by the prosecutor in exercising peremptory strikes, the state must present a racially neutral explanation for its challenges. Id. 106 S.Ct. at 1723.
 "Batson, however, does not apply to Procter's circumstances. Allen v. Hardy, [478] U.S. [255], 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) unequivocally held that 'Batson should not be applied retroactively on collateral review of convictions that became final before our opinion was announced.' A conviction becomes final when 'the availability of appeal [has been] exhausted, and the time for petition for certiorari [has] elapsed.' Id. 106 S.Ct. at 2880 n. 1 (quoting Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965)). Because Procter's conviction became final [in 1977] long before Batson was decided, Procter cannot make a constitutional claim that rests on Batson." Procter, 831 F.2d at 1254.
 II
Horsley contends that his appointed counsel both at trial and on direct appeal were ineffective because they failed to object to the prosecution's use of its peremptory jury strikes and failed to raise the issue of racial discrimination in the selection of the jury either at trial or on appeal.
In denying the coram nobis petition, the circuit judge issued a very thorough and comprehensive written order. With regard to this particular allegation he found:
 "Petitioner's final allegation of ineffective assistance, contained in his second amendment to the petition, was that trial counsel failed to challenge the prosecution's peremptory strikes as being exercised in a racially discriminatory manner. Petitioner's second amendment came after the evidentiary hearing but the parties have stipulated that trial counsel would have testified 'that they thought that Swain v. Alabama, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965), precluded a successful challenge to the prosecution's peremptory strikes based on the strikes exercised in petitioner's case.'
 "At the time of petitioner's trial, November, 1977, Swain v. Alabama controlled objections to prosecution peremptory strikes as being racially motivated. In order to prove racial discrimination in prosecution peremptory strikes under Swain v. Alabama, a defendant was required to establish that a prosecutor had systematically excluded, over time, all potential black jurors from service on petit juries. Id., at 223-224 [85 S.Ct. at 837-838]. The fact that a prosecutor struck all black venire members in one case did not make out a claim under Swain v. Alabama. Counsel's performance at trial did not fall below prevailing professional norms due to their not making a challenge to the prosecution's peremptory strikes for which there was an insufficient basis in fact. At the time of trial, Swain v. Alabama had been the law for twelve years. Trial counsel were not required to anticipate that the law would change nine years later in order to render constitutionally effective representation.
 "Additionally, petitioner has not met his burden of establishing a reasonable probability that, but for the absence of a *Page 1358 
challenge to the prosecution's peremptory strikes, the outcome of his trial would have been different. The United States Supreme Court's decision in Batson v. Kentucky, [476 U.S. 79], 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which changed a defendant's burden in challenging prosecution peremptory strikes, is not retroactively applicable to petitioner's trial because his conviction was final before Batson was decided. Allen v. Hardy, [478 U.S. 255], 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); Ex parte Love, [507 So.2d 979] No. 85-909 (Ala. Feb. 20, 1987). Thus, even if trial counsel had challenged the prosecution's peremptory strikes based on the strikes at petitioner's trial, he would not have made out a claim for relief under the controlling law and would not have been entitled to relief."
* * * * * *
 "None of petitioner's allegations of ineffective assistance of counsel have merit. Petitioner was represented by able and conscientious counsel who defended him to the best of their ability. He was convicted and sentenced to death because of the great weight of evidence against him and not because of any action or inaction of trial counsel. Petitioner is not entitled to relief on this claim."
The substance of this issue was also addressed inProcter, supra, where the claim was made that trial counsel was ineffective for failing to make Batson objections.
 "The standard governing constitutional claims for the ineffective assistance of counsel is that of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a defendant
 " 'must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'
"Id. 104 S.Ct. at 2064.
 "The burden that Washington imposes on a defendant is severe. In evaluating whether an attorney's performance was deficient, courts should be highly deferential, respecting the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Id. at 2065. Farther, in evaluating whether any errors prejudiced the defense, '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' Id. at 2067. Instead, the defendant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id.
at 2068. The defendant must show more than a mere possibility, but by less than a preponderance of the evidence, that the error affected the trial. Id.
 "Applying the strict standard of Washington to Procter's claims, we cannot conclude that Procter's trial counsel provided ineffective assistance. Assuming, without deciding, that the representation fell below an objective standard of reasonableness, Procter has failed to demonstrate a reasonable probability that, without these errors, the outcome in his case would have been any different.
 "First, it is clear that a Batson objection would have served little purpose because Procter's trial was governed not by Batson, see supra Part II, but by the difficult-to-meet standard of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759
(1965). Under Swain, a defendant asserting that the prosecutor's exercise of peremptory strikes was racially motivated had to prove a historical pattern or practice of race-conscious strikes. Id.
85 S.Ct. at 837. Procter *Page 1359 
does not argue that he can meet the Swain
standard." Procter, 831 F.2d at 1255-56 (footnote omitted).
See also People v. Dixon, 160 Ill. App.3d 65, 111 Ill.Dec. 888, 891, 513 N.E.2d 134, 137, appeal denied, 117 Ill.2d 547, 115 Ill.Dec. 404, 517 N.E.2d 1090 (1987). Other cases have held that the failure to question the jury on possible racial prejudice, Magwood v. Smith, 791 F.2d 1438, 1445 (11th Cir. 1986), or to argue the issue on appeal, Gaines v. Thieret,665 F. Supp. 1342, 1345-49 (N.D.Ill. 1987), was reasonable strategy and not ineffectiveness. See also Hoppins v. State,440 So.2d 1125 (Ala.Cr.App. 1983).
"[T]he failure by counsel in a capital case to raise any particular claim or claims does not per se fall below an objective standard of reasonableness." Lindsey v. Smith,820 F.2d 1137, 1144 (11th Cir. 1987). Batson was a "clear break" with past precedent. Allen, 478 U.S. at 258, 106 S.Ct. at 2880. "A reviewing court must not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors." Blackburn v. Foltz, 828 F.2d 1177, 1180 (6th Cir. 1987). The circuit court correctly found that neither trial nor appellate counsel were ineffective in failing to raise theBatson issue.
 III
Horsley's equal protection claim regarding the application ofBatson v. Kentucky, supra, is "precluded" by Allen v. Hardy, supra. Lindsey, 820 F.2d at 1145-46.
 IV
In our opinion, the memorandum opinion of the circuit court issued in denying the coram nobis petition fully answers Horsley's allegations that he was denied effective assistance of counsel. Portions of that opinion, which we adopt, are as follows:
 "ASSISTANCE OF COUNSEL
"Petitioner's first claim, contained in paragraphs 12-23 and 29-37 of the petition, and the second amendment to the petition, alleged that he was denied effective assistance of counsel. An evidentiary hearing was held on this claim on January 9, 1987. At that hearing, petitioner was represented by counsel and, in addition, was permitted to examine witnesses himself. Petitioner did not testify. The Court has considered the testimony presented at the evidentiary hearing, the stipulations entered into by the parties, and the trial transcript, and finds that petitioner was not denied effective assistance.
 "Legal Standard for Deciding Claims of Ineffective Assistance
"The test to be used in deciding claims of ineffective assistance is set out in Strickland v. Washington, 466 U.S. 668
[104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). Ex parte Daniel,459 So.2d 948, 951 (Ala. 1984). In Strickland v. Washington, the Supreme Court held that, in order to make out a claim of ineffective assistance, a defendant must make a two part showing:
 " 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
 Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'
"466 U.S. at 687 [104 S.Ct. at 2064].
 "Trial Counsel
"Petitioner was represented at trial by Nicholas Hare, Jr. and John Causey. Both Hare and Causey testified at the evidentiary hearing. After hearing their testimony and observing their demeanor, the Court finds that each was a credible witness.
"Trial counsel interviewed petitioner a number of times before trial. Petitioner *Page 1360 
was able to communicate with them about the crime and his defense. He never told trial counsel about any injuries or mental problems in his past. He never displayed any mental problems in his dealings with them. Both trial counsel had represented defendants with mental problems before they were appointed to represent petitioner and petitioner never acted like those defendants.
"Trial counsel also contacted petitioner's mother and grandmother in North Carolina by telephone before trial. Trial counsel asked them about petitioner's background and family. Trial counsel asked them for possible witnesses and asked them to come to the trial but they could not. Before they arrived in Alabama for the sentencing hearing, petitioner's mother and grandmother did not tell trial counsel that petitioner had ever been injured or had any mental problems. After learning of petitioner's childhood fall, trial counsel called both petitioner's mother and grandmother as witnesses and elicited testimony concerning petitioner's childhood fall. (Trial Transcript 248-256)
"In addition to trial counsel's interviews of petitioner and his family, Causey attended the trial of petitioner's co-defendant Brian Keith Baldwin. Trial counsel also contacted an attorney in North Carolina and asked him for help but he refused.
 "Findings on Specific Allegations
"Petitioner's first allegation of ineffective assistance, contained in paragraph 12(a) of the petition, was that trial counsel did not assert petitioner's purported mental deficiency, resulting from a childhood fall, as a ground for suppressing his statements. At the evidentiary hearing, both trial counsel, each of whom had represented clients who had mental problems, testified that during their preparation for trial they did not discover any evidence that petitioner had any mental problems. Trial counsel had extensive contact with petitioner and members of his family before trial and specifically asked him and his family about his background. Trial counsel were not told about any childhood injury until the day of the sentencing hearing when petitioner's mother and grandmother told them.
"Petitioner did not present any evidence to contradict trial counsel's testimony. Petitioner also did not present any evidence at the evidentiary hearing to contradict trial counsel's assessment of his mental condition. At no time during his trial or the evidentiary hearing did petitioner demonstrate through his actions or demeanor that he was mentally deficient or disturbed.
"Trial counsel conducted a reasonable pretrial investigation in petitioner's case. They sought, but neither petitioner nor his family revealed, any evidence from his life which could be used in his defense. They found no evidence to support a claim that petitioner's statements were involuntary because of his mental condition. Trial counsel were unable to discover any evidence of a childhood accident until trial because neither petitioner nor his family revealed the existence of such an event, even in response to questioning about petitioner's personal history and background. The reasonableness of a lawyer's decisions may be determined or substantially influenced by what his client tells him. Strickland v.Washington, supra, 466 U.S. at 690 [104 S.Ct. at 2066].
"Not only was trial counsel's performance not deficient, but petitioner has also failed to prove that he was prejudiced by the absence of a challenge to the voluntariness of his statements based on his mental condition. At trial, the evidence that petitioner understood and waived his right not to make a statement was overwhelming. Petitioner was read hisMiranda rights on a number of occasions and never indicated or displayed any inability to understand what he was doing. Even if true, petitioner's evidence of a childhood fall does not warrant a finding that petitioner was incapable of voluntarily making a statement. Petitioner's evidence does not establish a reasonable probability that, but for the absence of such a challenge, the outcome of his trial would have been different.
"Petitioner's second allegation of ineffective assistance, contained in paragraph *Page 1361 
12(b) of the petition, was that trial counsel did not object to this portion of the trial court's oral charge:
 " 'The law is presumed to have been enacted for the benefit of society as a whole and therefore you must take the law and if there is any error made by the judge in the pronouncement of that law in any way, that error may be reviewed in another [court] on another day with which you have no concern. . . .'
"(Trial Transcript at 234.) In making this allegation, petitioner ignored that portion of the charge immediately following the language upon which he fastened:
 " 'Ladies and gentlemen, this brings me to the responsibility which you have in this courtroom. You are the sole judges of the evidence in this case and no person, no mortal man or no law, can take from a petit jury the responsibility which it has in discharging the function that it has as triers of the fact. You are the sole judges of the evidence in this case, ladies and gentlemen, and of the weight and of the credibility that you want to attach to that evidence. . . .'
"(Trial Transcript at 234) (emphasis added)
"The trial court's charge did not relieve the jury of any of its responsibility for deciding petitioner's case but rather emphasized that the jury and only the jury could decide the facts. Petitioner's reliance on Caldwell v. Mississippi,472 U.S. 320 [105 S.Ct. 2633, 86 L.Ed.2d 231] (1985), is inapposite since nothing in the charge led the jury to believe that the responsibility for determining petitioner's guilt lay elsewhere or that their decision would be reviewed.
"Petitioner's trial counsel's performance was not deficient for failing to object to the trial court's oral charge. Trial counsel are not obliged to object without regard to the merits of the objection. E.g., Palmes v. Wainwright, 725 F.2d 1511,1523 (11th Cir.) cert. denied, 469 U.S. 873 [105 S.Ct. 227,83 L.Ed.2d 156] (1984). Petitioner also failed to establish a reasonable probability that, but for the trial court's charge, the outcome of his trial would have been different. A passing reference, at the worst, to review of errors of law when directly coupled with an explanation in the strongest terms of the jury's responsibility to decide whether a defendant is guilty or innocent cannot be construed to and did not diminish the jury's sense of its responsibility.
"Petitioner's third allegation of ineffective assistance, contained in paragraphs 15(a), 15(b), 15(d), and 16(a), was that trial counsel failed to submit his mental deficiency, resulting from a childhood fall, as mitigation. At the evidentiary hearing trial counsel testified that they only learned of petitioner's fall on the day of sentencing when they were told of it by petitioner's mother and grandmother. Trial counsel only learned of the fall at this late date despite their repeated efforts to obtain information of this type from both petitioner and his family. Trial counsel testified, and the trial transcript shows, that they presented this testimony, which was all the evidence they had to present, at sentencing.
"Trial counsel conducted a reasonable pre-trial investigation which included seeking evidence from petitioner's background favorable to him. Trial counsel had extensive pretrial contact with petitioner and petitioner did not appear to them to suffer from any mental deficiency or disability. Trial counsels' performance was not deficient for failing to present evidence of petitioner's purported mental deficiency. The absence of any additional evidence can be attributed not to trial counsel but to petitioner and his family. Trial counsel's representation was not deficient simply because petitioner's coram nobis counsel developed some arguably mitigating evidence not presented at trial where trial counsel made a reasonable effort to discover such evidence. Burger v. Kemp, 753 F.2d 930,938-939 (11th Cir. 1985).
"Petitioner has also failed to establish a reasonable probability that, but for the absence of some additional evidence showing a childhood injury, the outcome of his trial would have been different. The jury was made aware of both the injury and its supposed effects through the testimony of petitioner's mother and grandmother. Any additional evidence would have been cumulative to this testimony and would not have affected petitioner's trial. *Page 1362 
"Petitioner's fourth allegation of ineffective assistance, contained in paragraph 15(c) of the petition, was that trial counsel failed to seek psychiatric assistance. Trial counsel's investigation and contact with petitioner did not lead them to think that he had mental problems warranting a psychiatric examination. Both counsel were, and are, experienced criminal defense attorneys who had represented clients with mental problems. Their strategic decision not to pursue a psychiatric examination was made after an extensive investigation and is not to be second-guessed. Strickland v. Washington, supra,466 U.S. at 690 [104 S.Ct. at 2066]. Petitioner has again failed to show that trial counsel's performance was deficient. Further, petitioner's evidence of a childhood fall does not establish that he was entitled to a psychiatric examination or psychiatric assistance or that, but for the absence of a request for a psychiatric examination, the outcome of his trial would have been different.
"Petitioner's fifth allegation of ineffective assistance, contained in paragraph 16(b) of the petition, was that trial counsel failed to present evidence establishing, as a mitigating circumstance, 'Petitioner's potential for adjustment to prison life.' Causey testified that trial counsel did not consider asserting that this mitigating factor was present. He also noted that petitioner committed the charged offense while on escape from prison in North Carolina. Petitioner's allegation is frivolous and trial counsel were not ineffective for failing to assert a mitigating circumstance which is contradicted by the facts."
The findings of the circuit judge are supported by the evidence. His legal conclusions are reasonable and sound. Therefore, the judgment of the circuit court denying Horsley's petition for writ of error coram nobis is affirmed.
AFFIRMED.
All Judges concur.