[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 113 
The appellant, Freddie Lee Wright, appeals from the circuit court's order denying his petition for writ of error coram nobis. He filed this petition on June 22, 1987, seeking collateral relief from his convictions and sentence of death; an evidentiary hearing on the petition was held on February 26, 1988; and the trial court's order denying relief was filed on May 24, 1989.[1] In denying the petition, the trial court issued a thorough opinion with detailed findings of fact. The appellant was initially represented in the coram nobis proceedings by the same counsel who represented him at his trial and on direct appeal; however, when it appeared during the coram nobis proceedings that questions would arise concerning the adequacy of trial and appellate counsel's representation, new counsel was appointed to represent the appellant.
In 1979, the appellant was convicted under the 1975 Death Penalty Act, Code of Alabama 1975, for the capital robbery of Warren Green (§ 13-11-2(a)(2) — robbery when the victim is intentionally killed) and for the capital murder of Warren and Lois Green (§ 13-11-2(a)(10) — first degree murder wherein two or more persons are intentionally killed), and he was sentenced to death.[2] On direct appeal from these convictions and death sentence, we initially reversed and remanded on the authority of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382,65 L.Ed.2d 392 (1980), and Ritter v. State, 403 So.2d 154 (Ala. 1981). Wright v. State, 407 So.2d 565 (Ala.Cr.App.), cert. denied, 407 So.2d 565 (Ala. 1981). Subsequently, the United States Supreme Court granted the state's petition for writ of certiorari, vacated the judgment of this court, and remanded the case to us for reconsideration in light of Hopper v. Evans,456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Alabama v.Wright, 457 U.S. 1114, 102 S.Ct. 2920, 73 L.Ed.2d 1325 (1982). After this remand, we affirmed the appellant's convictions and sentence of death. Wright v. State, 494 So.2d 726 (Ala.Cr.App. 1985). Thereafter, the Alabama Supreme Court affirmed the convictions and sentence, Ex parte Wright, 494 So.2d 745 (Ala. 1986), and the United States Supreme Court denied the appellant's petition for writ of certiorari, Wright v. Alabama,479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987).
The evidence presented by the state at trial showed the following: The appellant, Percy Craig, Roger McQueen, and Reginal Tinsley, robbed the Western Auto Store in Mount Vernon. During the course of the robbery, the appellant and Tinsley forced Warren and Lois Green, the operators of *Page 114 
the store, into a back room and tied them together with an electric extension cord. McQueen removed the money from the cash register at the appellant's instructions; the appellant took a television set and stereo system from the store; and Tinsley took several wristwatches. After removing Mr. Green's wristwatch from his arm, the appellant executed the Greens by shooting each of them one time in the head with a .38 caliber pistol. The appellant was the last to leave the store; upon entering the getaway car, he told his accomplices that he had shot the two people in the store; and he produced two spent cartridges, which were thrown from the vehicle. The robbers then drove to another location where they divided their loot. Subsequently a .38 caliber pistol was recovered from the premises where the appellant resided. According to a ballistics expert, it could have been the murder weapon. The appellant had been seen with the pistol prior to the murder.
McQueen and Craig testified for the state, giving details of the planning and execution of the robbery-murders and the division of the spoils. Both admitted participating in the robbery and testified that they intended to plead guilty. Both testified that the appellant, upon entering the automobile, stated that he had shot the Greens. Craig further testified that, after the commission of the crimes, he saw the appellant with Mr. Green's watch and that the appellant gave the watch to Joe Nathan Beckham, who pawned it. The watch was recovered from a pawnshop and was identified as Mr. Green's watch. Doris Lacey Lambert testified that, on the day after the robbery-murders, the appellant told her that he and his companions had gone to Mount Vernon and that he had killed two people in a Western Auto Store.
The appellant did not testify. He attempted to establish an alibi defense by the testimony of Carl Harrington to the effect that the appellant was with him at the Ebony Club in Mobile at the time of the robbery-murders.[3]
On appeal, the appellant raises three issues in his brief. He claims that, in violation of Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state withheld exculpatory evidence indicating that a person named Theodore Otis Roberts was involved in the robbery-murders of the Greens for which he was convicted. He also claims that his trial counsel was constitutionally ineffective for failing to investigate Roberts's involvement in the robbery-murders; for failing to obtain a transcript of the appellant's first trial, which had resulted in a mistrial; for failing to raise the issue of whether the trial court erred in granting the state's motion in limine regarding the arrest, indictment, and incarceration of Roberts; and for failing to challenge the state's use of peremptory jury strikes in a discriminatory manner. He finally claims that the trial court, in the instant coram nobis proceedings, committed error in adopting the state's proposed findings of fact and conclusions of law.
The appellant has raised numerous issues in his petition for writ of error coram nobis that he has not addressed in his brief. The state urges us to address those issues in order to avoid possible successive petitions for collateral relief and to determine that they are procedurally barred from review. We will discuss these issues later in this opinion. *Page 115 
 I.
The appellant contends that the state suppressed evidence that Mary Johnson was in the Western Auto Store shortly before the Greens were murdered, and that she identified Roberts as a person who entered the store at that time. In addition, he contends that the state suppressed evidence that a state firearms expert found that a pistol traced to Roberts was the murder weapon in the Green murders.
The record discloses that, shortly after the robbery-murders, and while the search for the culprits was underway, Mary Johnson reported to the police the following: shortly before the robbery-murders, she entered the Western Auto Store; as she entered, she observed a blue automobile with several persons in it in the vicinity of the store; when she entered the store, she was the only person beside the Greens in the store; she had a short visit with the Greens and, as she exited the store, she met a person entering; she did not know the person and had never seen him in Mount Vernon; as she left the store, she observed the same blue automobile parked nearby with three people in the back seat and one person in the front seat; they kept their faces turned away from her. The evidence further showed that when she learned of the murders a short time later, she came forward and gave the police a description of the person she had seen entering the store. She subsequently identified a photograph in a spread of photographs as the person she saw and later identified that person in a police lineup. The person she identified in both instances was Roberts. Roberts bears a striking resemblance to McQueen, and the automobile driven by Craig on the day of the robbery-murders was blue. A seized .38 caliber pistol was traced to Roberts and was identified, by a state's ballistics expert, as being consistent with the murder weapon.
Capital murder charges were filed against Roberts; he was arrested, and a preliminary hearing was held. Johnson as well as others testified at the hearing. The details of the crimes, the charges against Roberts, his arrest, the testimony of the witnesses at the preliminary hearing, including Johnson, and the report of the ballistics expert pertaining to the pistol traced to Roberts received broad coverage in area newspapers. Roberts was indicted.
In the meantime, the investigation continued and began to focus on the appellant, McQueen, Craig, and Tinsley. They were arrested. McQueen, Craig, and Tinsley confessed to their participation in the crimes, and all three named the appellant as the triggerman. None of the four ever implicated Roberts in any way.
The state ballistics expert, after examining a .38 caliber pistol which had been seized at the appellant's residence and traced to him, concluded that he could not make a positive identification of either pistol as being the murder weapon, but that either pistol could have been or was consistent with the murder weapon. The difficulty experienced by the ballistics expert in making a positive identification was because of the fragmented condition of the bullets recovered from the victims' bodies.
As the evidence mounted against the appellant, Craig, McQueen, and Tinsley, particularly with the confessions of the latter three naming the appellant as the triggerman, and no further evidence having been discovered linking Roberts with the crime, along with the uncertainty of the ballistics findings, the state concluded that there had been a misidentification by Johnson of Roberts, and it dropped the charges against Roberts. Craig, McQueen, and Tinsley were indicted for murder in the first degree, a non-capital offense, and the appellant was indicted for the capital offenses for which he was eventually convicted.
The holding in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), requires that the prosecution disclose evidence in its possession that is both favorable to the defendant and material to deciding guilt or punishment. In order to establish a Brady violation, a defendant must prove that the prosecution suppressed the evidence, that the evidence was favorable to him or that it was exculpatory, and that the evidence was material. Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. *Page 116 
denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
After the evidentiary hearing on the appellant's coram nobis petition, the trial court found that the state did not suppress evidence pertaining to Mary Johnson's identification of Roberts, information covering Roberts's arrest and indictment for the commission of the crimes, or the fact that a pistol had been traced to Roberts and had been identified by a state ballistics expert as consistent with the murder weapon. These findings are fully supported by the record. The appellant's counsel was aware that Roberts had been charged with the crimes prior to the appellant's trial; the preliminary hearing in Roberts's case was a matter of public record; and counsel was not only aware of the ballistics evidence in reference to the pistol traced to Roberts before trial, but also used the evidence at trial to impeach the ballistics expert. Further, the substance of Johnson's testimony and of the ballistics expert testimony was reported extensively in the local newspapers prior to the appellant's trial.
The trial court also found that the evidence in question did not meet the materiality requirement of Brady. We agree. InUnited States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375,87 L.Ed.2d 481 (1985), the Court held that a violation of Brady
requires a new trial only if the suppressed evidence is material, and the evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. See also United States v. Agurs, 427 U.S. 97,96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
Evaluating Johnson's testimony in the context of the entire record, we find that there is nothing in her testimony which would, to a reasonable probability, have changed the result of either the guilt stage or the sentencing stage of the appellant's trial. In reference to the findings of the ballistics expert, the appellant's trial counsel possessed this information prior to the appellant's trial and impeached the testimony of the expert at his trial by bringing out on cross-examination the fact that the expert had identified another gun, the one linked with Roberts, as the possible murder weapon. Thus, the jury was fully aware of the conflicting ballistics evidence pertaining to the pistols.
We find that the appellant has failed to show either that the state suppressed evidence or that the allegedly suppressed evidence was material.
 II.
The appellant alleges several "errors" committed by his counsel which, according to his petition, constituted a denial of his right to effective assistance of counsel. We analyze these claims under the two-pronged test of Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). To prevail on his ineffective assistance of counsel claims, the appellant must show that counsel's performance was outside the wide range of reasonable professional conduct and that the deficiency of counsel's performance had an effect on his conviction, sentence, or appeal. Id. at 688-91,104 S.Ct. at 2064-67.
The appellant contends that his trial counsel was ineffective because he failed to thoroughly investigate evidence of Roberts's alleged involvement in the robbery-murders. He argues that further investigation would have led to Johnson's testimony at Roberts's preliminary hearing and to the ballistics evidence of the state firearms expert pertaining to the pistol traced to Roberts. We have previously pointed out that the ballistics evidence pertaining to Roberts's pistol was available to defense counsel prior to trial and was used for impeachment of the state's ballistics expert at trial.
The trial court found that the failure of the appellant's trial counsel to further investigate Roberts's involvement was the result of a strategic decision by trial counsel not to pursue a defense based on implicating Roberts in the commission of the crimes. The court based this finding on the skill and reputation of counsel, counsel's prior knowledge of Roberts's having been the focus of the investigation and *Page 117 
having been indicted for the offenses, and counsel's having discussed the case with Roberts's attorney prior to trial. The court further found that counsel's decision not to base a defense on Roberts's alleged involvement was sound strategy, and it gave a number of reasons for that conclusion. In addition, the court found that, even if trial counsel had discovered Johnson's testimony implicating Roberts, there was no reasonable probability that the result of the trial would have been different.
The record contains ample evidence to support these findings, and we concur in them. Trial counsel's conduct in this regard was within the range of reasonable professional conduct, and the fact that he did not further pursue Roberts's alleged involvement in the crimes had no effect on the appellant's convictions and sentence. The appellant argues that the fact that his first trial ended in a mistrial enhances the importance of Johnson's testimony and that it could have been so crucial that its absence undermines confidence in the outcome of the trial. We find no merit in this argument. While the state points out plausible reasons in its brief for the different results of the trials, they are not part of the record before us. We will not speculate on the reasons for the mistrial. The evidence amassed against the appellant in the second trial was overwhelming, and we cannot conceive that any retrial that included Johnson's testimony could reach a different result.
The appellant also contends that his trial counsel was ineffective for failing to obtain a transcript of his first trial, which ended in a mistrial. The trial court found that counsel was not deficient in not obtaining a transcript of the first trial, and that there was no evidence showing that a lack of such a transcript had any effect on the second trial or its results. We agree with these findings. The appellant has failed to prove that his counsel's "failure" prejudiced his defense.
The appellant further claims that his counsel was ineffective for failing to raise, on direct appeal, the issue of whether the trial court erred in granting the state's motion in limine regarding the arrest, indictment, and incarceration of Roberts. The trial court found that the granting of the motion did not prevent the appellant from introducing substantive evidence relating to Roberts at trial; that evidence relating to Roberts and his pistol was in fact introduced at trial by the appellant and was used to impeach the state's ballistics expert; that the granting of the motion was proper as a matter of law; and that, had appellate counsel argued the issue on appeal, there was no reasonable possibility that the result of the appeal would have been different. These findings are supported by the record, and we concur in them.
The appellant claims that his trial counsel was ineffective for failing to raise a Batson[4] challenge to the state's use of its peremptory strikes in a discriminatory manner. The trial court correctly held that this claim is without merit. SeePoole v. United States, 832 F.2d 561 (11th Cir. 1987); Horsleyv. State, 527 So.2d 1355 (Ala.Cr.App.), cert. denied,527 So.2d 1355 (Ala. 1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1328,103 L.Ed.2d 596 (1989); James v. State, 564 So.2d 1002
(Ala.Cr.App. 1989). See also Allen v. Hardy, 478 U.S. 255,106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).
To summarize, none of the alleged errors set out above constitute ineffective assistance of counsel.
 III.
The appellant claims that the trial court erred in adopting the state's proposed findings of fact and conclusions of law. While the practice of adopting the state's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous.Anderson v. City of Bessemer, N.C., 470 U.S. 564,105 S.Ct. 1504, 84 L.Ed.2d 518 *Page 118 
(1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App. 1991);Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrisonv. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied,495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Our review of the instant record convinces us that the trial court's findings of fact and conclusions of law are supported by the evidence, and are not clearly erroneous. We concur in those findings and conclusions. We find no error here.
 IV.
In addition to the claims specifically raised and argued by the appellant in his brief, which we have addressed above, he raises 15 additional claims in his petition for writ of error coram nobis. These claims are as follows:
 "(1) Whether the preclusion clause in the Alabama death penalty statute denied Wright equal protection and due process in that it removed from trial counsel's arsenal even the consideration of any trial tactics other than winning at all costs;
 "(2) Whether Wright was denied equal protection of the laws by the preclusion clause of the Alabama death penalty statute in that options other than winning at all costs were precluded from any consideration by counsel or the courts;
 "(3) Whether trial of Wright by an all white jury denied him a jury of his peers;
 "(4) Whether the trial court erred in dismissing certain jurors for their opposition to the death penalty without determining whether or not they could reach a decision on guilt or innocence separately from the question of sentence;
 "(5) Whether the provisions of the Alabama death penalty statute requiring the jury to make a finding of guilt and fix the punishment at death, if the jury found Wright guilty, improperly required the exclusion of jurors who would be willing to consider the facts as to guilt or innocence even though opposed to the sentence of death and thereby denied Wright due process and equal protection;
 "(6) Whether death qualifying the jury operated to disqualify a disproportionate number of black jurors, as blacks are more prone to be unalterably opposed to the imposition of a sentence of death than are whites;
 "(7) Whether the trial court erred in not holding a hearing and recording testimony from which an appeal could be taken concerning the exclusion of the testimony concerning the arrest of Theodore Otis Roberts;
 "(8) Whether the trial court erred in allowing the facts to go to the jury on the uncorroborated testimony of co-conspirators;
 "(9) Whether the sentence finding that the circumstances of Wright's crime were especially heinous, atrocious or cruel was contrary to the requirements as set out by the United states Supreme Court that a finding such as that required more than just the killing of someone;
 "(10) Whether Wright's death sentence was disproportionate when considered in light of sentences in other cases with similar facts;
 "(11) Whether Wright's indictment for a capital offense was selective in that admitted co-conspirators who acknowledged their guilt were indicted for lesser offenses and given lesser sentences;
 "(12) Whether the testimony of state's witnesses Percy Craig and Roger McQueen was both coerced and perjured;
 "(13) Whether delays sought by the state denied Wright a hearing of his claims and resulted in his being denied a new trial as had been ordered by the appellate courts of the state of Alabama;
 "(14) Whether delays in the appellate process sought and received by the state denied Wright due process and equal protection of the laws as guaranteed by the Constitution of the United states of America; and
 "(15) Whether the Alabama death penalty statute is unconstitutional because it fails to provide defendants equal protection *Page 119 
and due process of law and because the error coram nobis procedure fails as a post-conviction procedure to provide an adequate state corrective process and the manner in which it is applied renders the process ineffective to protect the rights of prisoners."
At the coram nobis hearing, the state urged the trial court to rule that the 15 claims listed above were procedurally barred from review. The court did rule that claims (1) and (2) pertaining to the preclusion clause were procedurally barred pursuant to A.R.Crim.P.Temp. 20.2(a)(2) and (4), and that "[a]ny other matters presented by the pleadings or evidence are deemed abandoned."
We have reviewed all 15 of the claims, and they clearly show on their face that they are procedurally barred from review because they either were raised and decided on direct appeal, or they could have been, but were not, raised on appeal. The failure to raise an issue which could have been raised at the original trial and on direct appeal bars the remedy of coram nobis review. Ex parte Singleton, 548 So.2d 167 (Ala. 1989); Exparte Ellison, 410 So.2d 130 (Ala. 1982); Weeks v. State;
A.R.Crim.P.Temp. 20.2(a)(4), (5). Current rules for post-conviction relief, which have superseded the writ of error coram nobis, are in accord with these cases. Although A.R.Crim.P.Temp. 20 did not become effective until April 1, 1987, the same procedural bars existed under prior case law.
For the foregoing reasons, the judgment of the circuit court denying the appellant's petition for a writ of coram nobis is affirmed.
AFFIRMED.
All Judges concur.
[1] The court's ruling was submitted for our consideration on February 14, 1991.
[2] The 1975 Death Penalty Act, as contained in §§ 13-11-1 through -9, was carried over intact to the new Criminal Code as §§13A-5-30 through -38. These sections of the new Criminal Code were repealed, effective July 1, 1981, by the 1981 capital offense statute appearing at §§ 13A-5-39 through -59, but only as to conduct occurring on or after July 1, 1981. Therefore, conduct occurring before July 1, 1981, as in the present case, is governed by the preexisting law, i.e., §§ 13A-5-30 through -38.
[3] Neither Craig, McQueen, nor Tinsley was prosecuted for a capital offense for their participation in the crimes, but they were prosecuted for murder in the first degree under § 13-1-70, Code of Alabama 1975. Craig was convicted of murder in the second degree and was sentenced to 10 years' imprisonment. He did not appeal. McQueen was convicted of murder in the second degree and was sentenced to 20 years' imprisonment. He appealed, but withdrew his appeal on November 29, 1979. Tinsley was convicted of murder in the second degree and was sentenced to 25 years' imprisonment. He appealed, and we affirmed his conviction and sentence on November 25, 1980. Tinsley v. State,395 So.2d 1069 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 1080
(Ala. 1981). The evidence introduced at Tinsley's trial connecting Tinsley with the crime consisted partly of the inculpatory statement by Tinsley that he, Craig, McQueen, and the appellant participated in the robbery and that the appellant fired the two shots that killed the victims. 395 So.2d at 1070.
[4] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).