766 So.2d 215 (2000)
Ex parte Freddie Lee WRIGHT.
(Re Freddie Lee Wright v. State).
1991001.
Supreme Court of Alabama.
March 2, 2000.
*216 Brian F. McDonough, Florham Park, New Jersey, for petitioner.
Bill Pryor, atty. gen., and J. Clayton Crenshaw, asst. atty. gen., for respondent.
Prior report: Ala.Cr.App., 766 So.2d 213.

ORDER
The petitioner, Freddie Lee Wright, having filed a motion for stay of execution in this case, and the same having been submitted and duly considered by the Court,
IT IS ORDERED that the motion for stay of execution is denied.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
COOK and JOHNSTONE, JJ., dissent.
JOHNSTONE, Justice (dissenting).
I dissent from the decision to deny a stay of execution. This emergency petition presents us with a macabre peculiarity. The petitioner complains only about the way he is to be put to death. Yet his petition recites persuasive facts that support the conclusion that he is innocent and that his conviction results from lack of a fair trial.
In 1979, Freddie Lee Wright's first trial ended in a mistrial when 11 jurors voted to acquit and 1 juror voted to find him guilty (a racially mixed jury). (Emergency Petition, p. 4.) Wright was retried approximately one month after the mistrial. (Emergency Petition, p. 4.) The State used "virtually all of its peremptory challenges to keep blacks off of the jury at the second trial." (Emergency Petition, p. 4.) Wright is black and the victims were white. The only new evidence at the second trial was the testimony of Doris Lacey Lambert, a former girlfriend of Wright and the mother of his child. Wright left Lambert for another woman. (Emergency Petition, p. 5.) Lambert testified that Wright confessed to her that he had killed two people at the Western Auto. The second jury found Wright guilty and recommended a death sentence.
In 1981, the Court of Criminal Appeals reversed Wright's conviction. Wright v. State, 407 So.2d 565 (Ala.Crim.App.1981), cert. denied, 407 So.2d 565 (Ala.1981), vacated and remanded, Alabama v. Wright, 457 U.S. 1114, 102 S.Ct. 2920, 73 L.Ed.2d 1325 (1982). On return to remand, the Court of Criminal Appeals affirmed Wright's conviction in an opinion. Wright v. State, 494 So.2d 726 (Ala.Crim.App. 1985). This Court affirmed the judgment of the Court of Criminal Appeals. Ex parte Wright, 494 So.2d 745 (Ala.1986), cert. denied, Wright v. Alabama, 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987). In 1987, Wright filed a Rule 20, Ala. R.Crim. P. Temp., coram nobis petition. The trial court denied the petition and the Court of Criminal Appeals affirmed. Wright v. State, 593 So.2d 111 (Ala.Crim.App.1991), cert. denied, 593 So.2d 111 (Ala.), cert. denied, Wright v. Alabama, 506 U.S. 844, 113 S.Ct. 132, 121 L.Ed.2d 86 (1992). In 1994, Wright filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Alabama. See Wright v. Hopper, 169 F.3d 695 (11th Cir.1999). United States District Judge Alex T. Howard denied Wright's petition and the Eleventh Circuit Court of Appeals affirmed. Id., cert. denied, ___ U.S. ___, 120 S.Ct. 336, 145 L.Ed.2d 262 (1999).
Wright claims that when Lambert testified the State was in possession of materials that would impeach her credibility. The District Attorney had five years' worth of psychiatric records that had been obtained from a State Mental Health Clinic where Lambert received treatment and psychiatric medication. Wright contends that Lambert's records reveal that she suffered from auditory hallucinations; that *217 her doctors diagnosed her as borderline mentally retarded; that she had a history of entertaining homicidal fantasies and suicidal thoughts; that she had a history of drug use, including THC and cocaine; that for years she had taken psychiatric medications; and that her doctor described her as "manipulative." (Emergency Petition, pp. 5-6.) The District Attorney did not reveal these records to Wright or his attorneys. Wright and his attorneys did not learn of the records until August or September 1996. (Emergency Petition, p. 6.)
After his conviction, Wright and his attorneys learned that Roger McQueen, an accomplice who testified against Wright, had a secret deal with the State that he would be prosecuted only for robbery and that his sentence for robbery would run concurrently with his sentence in Mississippi for armed robbery. (Emergency Petition, p. 6.) In 1992, McQueen was released from a Mississippi prison. He was not returned to Alabama to serve his sentence for his role in the murders. (Emergency Petition, p. 7.) At a federal hearing on Wright's habeas corpus petition, McQueen affirmed the existence of a secret deal with the State, and recanted his testimony against Wright. (Emergency Petition, p. 7.)
Before indicting Wright for the murders, the State had indicted Theodore Otis Roberts for the murders based on an eyewitness's identification of Roberts, a ballistics report identifying Roberts's handgun as the murder weapon, and an incriminating statement made to the police by Roberts's girlfriend. (Emergency Petition, p. 4.) When McQueen and Percy Craig, two confessed participants in the murders, implicated Wright as the "triggerman," the State dismissed the charges against Roberts. The District Attorney did not inform Wright or his attorneys of these facts.
The prosecuting District Attorney, Chris Galanos, testified at the federal habeas hearing that he should have given Wright and his attorneys copies of Lambert's psychiatric records, any information about a deal between the State and McQueen, and the evidence against Roberts. (Emergency Petition, p. 7.) Judge Howard denied Wright's request for habeas relief because of "legal technicalities and [his] belief that a federal court was not the proper forum in which to re-try the case." (Emergency Petition, p. 9.)
Except under Rule 39(k), Ala. R.App. P., Wright's claim of innocence may be procedurally barred because his post-conviction counsel have dropped the ball along the way. Wright's complaints about the State's withholding evidence regarding Roberts's participation have already been before us in Wright's 1987 Rule 20 petition. However, from what I can gather in the haste that this last-minute petition requires of us, Wright's complaints about the witnesses Lambert and McQueen have not been before us yet because Wright did not discover the information in time to include it in his 1987 Rule 20 petition.
Whether Wright is electrocuted or injected seems insignificant compared to the likelihood that we are sending an innocent man to his death. We should stay this execution briefly and take another look at this case under Rule 39(k).
COOK, J., concurs.