925 So.2d 245 (2005)
Trace Royal DUNCAN
v.
STATE of Alabama.
CR-03-1634.
Court of Criminal Appeals of Alabama.
March 18, 2005.
Opinion on Return to Remand May 27, 2005.
Rehearing Denied July 8, 2005.
Certiorari Denied August 19, 2005.
*250 M. Bradley Almond, Tuscaloosa, for appellant.
Troy King, atty. gen., and Jasper B. Roberts, Jr., asst. atty. gen., for appellee.
Alabama Supreme Court 1041589.
BASCHAB, Judge.
On November 2, 1995, the appellant, Trace Royal Duncan, was convicted of the capital offenses of kidnapping-murder, a violation of § 13A-5-40(a)(1), Ala.Code 1975, and robbery-murder, a violation of § 13A-5-40(a)(2), Ala.Code 1975. By a vote of 10-2, the jury recommended that he be sentenced to death. On March 8, 1996, the trial court accepted the jury's recommendation and sentenced him to death. This court affirmed the appellant's convictions on direct appeal, see Duncan v. State, 827 So.2d 838 (Ala.Crim.App.1999); the Alabama Supreme Court affirmed our judgment, see Ex parte Duncan, 827 So.2d 861 (Ala.2001); and the United States Supreme Court denied the appellant's petition for certiorari review, see Duncan v. Alabama, 537 U.S. 860, 123 S.Ct. 237, 154 L.Ed.2d 99 (2002). The relevant facts of the case are set forth in this court's opinion on direct appeal. This court issued a certificate of judgment on February 26, 2002.
On July 29, 2003, the appellant, through counsel, filed a Rule 32 petition, challenging his convictions. Thereafter, the appellant, through counsel, filed amended Rule 32 petitions on August 21, 2003, on November 4, 2003, and on March 29, 2004. After the State responded, the circuit court summarily denied the petition and the amendments thereto. This appeal followed.
As an initial matter, we note that, in Roper v. Simmons, 543 U.S. 551, 578, 125 S.Ct. 1183, 1200, 161 L.Ed.2d 1 (2005), the United States Supreme Court held that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." Because this case is before this court on appeal from the denial of the appellant's Rule 32 petition, we must determine whether Roper applies retroactively to *251 cases on collateral review. In Clemons v. State, [Ms. CR-01-1355, August 29, 2003] ___ So.2d ___, ___ (Ala.Crim.App.2003), when concluding that the United States Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), applies retroactively to cases on collateral review, we reasoned:
"In Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989), the United States Supreme Court held:
"`[W]e now adopt Justice Harlan's view of retroactivity for cases on collateral review. Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.'
"The Court then recognized two exceptions to the general rule: (1) those instances in which the new rule places certain kinds of conduct beyond the power of the criminal law-making authority to proscribe and (2) those instances in which the new rule is a `watershed' rule of criminal procedure that requires the observation of procedures that are implicit in the concept of ordered liberty and whose non-application would seriously diminish the likelihood of an accurate conviction. See Teague, 489 U.S. at 307, 311, 313, 109 S.Ct. at 1073, 1076, 1077.
"In Penry [v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)], the United States Supreme Court stated:
"`Under Teague, we address the retroactivity issue as a threshold matter because Penry is before us on collateral review. 489 U.S., at 310. If we were to hold that the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry, we would be announcing a "new rule." Id., at 301. Such a rule is not dictated by precedent existing at the time Penry's conviction became final. Moreover, such a rule would "brea[k] new ground" and would impose a new obligation on the States and the Federal Government. Ibid. (citing Ford v. Wainwright, 477 U.S. 399, 410 (1986), which held that the Eighth Amendment prohibits the execution of insane persons, as a case announcing a new rule).
"`In Teague, we concluded that a new rule will not be applied retroactively to defendants on collateral review unless it falls within one of two exceptions. Under the first exception articulated by Justice Harlan, a new rule will be retroactive if it places "`certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" Teague, supra, at 307 (quoting Mackey [v. United States], 401 U.S. [667], at 692 [(1971)] (Harlan, J., concurring in judgments in part and dissenting in part)). Although Teague read this exception as focusing solely on new rules according constitutional protection to an actor's primary conduct, Justice Harlan did speak in terms of substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed. This Court subsequently held that the Eighth Amendment, as a substantive matter, prohibits imposing the death penalty on a certain class of defendants because of their status, Ford v. Wainwright, supra, at 410 (insanity), or because of the nature of their offense, Coker v. Georgia, 433 U.S. 584 (1977) (rape) (plurality opinion). In our view, a new rule placing a certain class of individuals beyond the State's power to punish by death *252 is analogous to a new rule placing certain conduct beyond the State's power to punish at all. In both cases, the Constitution itself deprives the State of the power to impose a certain penalty, and the finality and comity concerns underlying Justice Harlan's view of retroactivity have little force. As Justice Harlan wrote: "There is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." Mackey, supra, at 693. Therefore, the first exception set forth in Teague should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense. Thus, if we held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review.'

"492 U.S. at 329-30, 109 S.Ct. at 2952-53 (emphasis added). Accordingly, we conclude that the decision in Atkins falls within Teague's first exception to the general rule of nonretroactivity and applies retroactively to cases that are on collateral review."
(Footnote omitted.) Similarly, Roper prohibits the execution of offenders who were under the age of 18 when their crimes were committed, regardless of the procedures followed. Therefore, we conclude that the decision in Roper falls within Teague's first exception to the general rule of nonretroactivity and applies retroactively to cases that are on collateral review.
The record clearly establishes that the appellant was 17 years old at the time of the offense in this case. Therefore, pursuant to Roper, his sentence of death is unconstitutional and must be set aside. For the reasons set forth herein, we conclude that the circuit court properly denied his requests for post-conviction relief as to the guilt phase of his trial and that his conviction is valid. However, in accordance with Roper, we must remand this case to the circuit court for that court to set aside the appellant's sentence of death and to resentence him to imprisonment for life without the possibility of parole. Further, because the sentence of death is no longer valid, it is not necessary to review the appellant's claims regarding the penalty phase of his trial because error, if any, in that regard is rendered harmless by Roper, and any arguments concerning the penalty phase of his trial are now moot. See Rule 45, Ala. R.App. P.
The appellant raises several arguments, including claims that his attorneys rendered ineffective assistance during the proceedings. In reviewing the circuit court's rulings on the appellant's arguments, we apply the following principles:
"`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129 (Ala.Cr.App. 1992).' Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App.1993), cert. denied, [511] U.S. [1046], 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
"In addition, `[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App. 1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala. Crim.App.1995).

*253 "To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"`The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances.... "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.'

"Duren v. State, 590 So.2d 360, 362 (Ala. Cr.App.1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, [503] U.S. [974], 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
"When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App.1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.

"`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'

"Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.Cr. App.1987).
"Initially we must determine whether counsel's performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable....' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App.1991)."
Hallford v. State, 629 So.2d 6, 8-9 (Ala. Crim.App.1992).
"In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that `[i]f it is easier to *254 dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the `prejudice' prong, for `[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."
Thomas v. State, 511 So.2d 248, 255 (Ala. Crim.App.1987) (footnote omitted).
"Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr. App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir.1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App.1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala. Crim.App.1998). Finally,
"[t]he purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992)(`We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.'). We recognize that `[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.' Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or `what is prudent or appropriate, but only what is constitutionally compelled.' Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)."
Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir.2000) (footnote omitted).

I.
The appellant's first argument is that the circuit court improperly adopted the State's proposed order.
"`While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Cr. App.1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala. Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).'

"Wright v. State, 593 So.2d 111, 117-18 (Ala.Cr.App.1991), cert. denied, [506] U.S. [844], 113 S.Ct. 132, 121 L.Ed.2d 86 (1992)."
Holladay v. State, 629 So.2d 673, 687-88 (Ala.Crim.App.1992). The record does not *255 indicate that the circuit court's findings are clearly erroneous. In fact, with the exception of the findings regarding the penalty phase of the trial, which we need not review, as set forth above, the record supports those findings. Therefore, the appellant's argument is without merit.

II.
The appellant's second argument is that the circuit court improperly summarily dismissed his ineffective-assistance-of-counsel claims.

A.
As an initial matter, the appellant appears to contend that the circuit court should have conducted an evidentiary hearing so he could present evidence to prove his claims. We addressed and rejected a similar argument in Coral v. State, 900 So.2d 1274, 1279-84 (Ala.Crim.App. 2004), as follows:
"Coral argues that the circuit court erred in dismissing his ineffective-assistance-of-counsel claims without first allowing him the opportunity to prove his claims. He contends that he is entitled to an evidentiary hearing so that he can develop these claims.
". . . .
"After the petition was filed, the State moved for partial dismissal arguing that `Coral has failed to meet the burden placed on him by Rule 32.6(b) of providing "full disclosure of the factual basis" on the claims of ineffective assistance of counsel.' As a result of the State's motion, the circuit court granted Coral 60 days to amend his petition to comply with the requirements of Rule 32.6(b), Ala. R.Crim. P. On the last possible day Coral filed an amended petition. The claims of ineffective assistance of counsel in this petition were virtually identical to those claims made in the original petition. The State again moved for a partial dismissal. On July 1, 1996, the circuit court held a hearing on the State's motion. A transcript of the hearing shows that the circuit court dismissed all but two of the ineffective-assistance-of-counsel claims for failure to comply with the provisions of Rule 32.6(b), Ala. R.Crim. P....
"Rule 32.6(b), Ala. R.Crim. P., addresses the requirements for the contents of a Rule 32 petition and states:
"`The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'
"As this Court stated in Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003):
"`"Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief." Boyd v. State, 746 So.2d 364, 406 (Ala.Crim. App.1999). In other words, it is not the pleading of a conclusion "which, if true, entitle[s] the petitioner to relief." Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.

"`Thus, a Rule 32 petitioner is not automatically entitled to an evidentiary hearing on any and all claims raised in the petition. To the contrary, Rule 32.7(d), Ala. R.Crim. P., *256 provides for the summary disposition of a Rule 32 petition
"`"[i]f the court determines that the petition is not sufficiently specific [in violation of Rule 32.6(b)], or is precluded [under Rule 32.2, Ala. R.Crim. P.], or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by further proceedings...."'
"913 So.2d at 1125-26.
"Certainly, Coral was not obliged to prove his allegations in his Rule 32 petition; however, he was required to comply with the provisions of Rule 32.6(b), Ala. R.Crim. P. This is not a situation where the circuit court dismissed the petition without allowing Coral to amend his claims. Coral was allowed to file an amended petition but failed to comply with the circuit court's instructions.
"When discussing the specificity requirements of Rule 32.6(b), Ala. R.Crim. P., as applied to ineffective-assistance-of-counsel claims, this Court has stated:
"`[W]e conclude that [the petitioner] failed to plead sufficient facts with respect to any of the claims to warrant any further proceedings.
"`In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.
"`Rule 32.3, Ala. R.Crim. P., states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.6(b), Ala. R.Crim. P., states that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
"`"An evidentiary hearing on a [Rule 32] petition is required only if the petition is `meritorious on its face.' Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is `meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986)."
"`Moore v. State, 502 So.2d 819, 820 (Ala.1986).
"`Although [the petitioner] specifically identified the acts or omissions on the part of his trial counsel that he *257 believed constituted deficient performance, he failed to include in his petition any facts tending to indicate how those acts or omissions prejudiced his defense. He did not include specific facts regarding the crimes or the evidence introduced at trial, and he did not even state in his petition what his defense was. Even accepting all of the allegations in his petition as true, we cannot say whether [the petitioner] is entitled to relief. Therefore, [the petitioner] has not provided "full disclosure of the factual basis" of his claims necessary to satisfy the specificity requirements of Rule 32.6(b), Ala. R.Crim. P., and the pleading requirements of Rule 32.3, Ala. R.Crim. P. Accordingly, the circuit court properly denied his claims of ineffective assistance of trial counsel without an evidentiary hearing.'

"Bracknell v. State, 883 So.2d 724, 727-28 (Ala.Crim.App.2003) (footnote omitted).
"We have carefully examined Coral's petition. We agree with the circuit court that these claims were not factually sufficient. Indeed, how is the State to defend against the general claim that counsel failed to prepare or investigate the case, without any specific facts to support the allegation? The intent in adopting Rule 32.6(b), Ala. R.Crim. P., was to ensure that one party did not obtain an unfair advantage over the other party  to place both the State and the petitioner on a level playing field. Coral's petition failed to comply with the provisions of Rule 32.6(b), Ala. R.Crim. P., and gave the State no ability to defend Coral's general claims.
". . . .
"The circuit court did not err in dismissing the majority of Coral's ineffective-assistance-of-counsel claims because they failed to comply with the specificity requirements of Rule 32.6(b), Ala. R.Crim. P."
Furthermore, Rule 32.7(d), Ala. R.Crim. P., provides, in pertinent part:
"If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may ... dismiss the petition...."
We have carefully examined the appellant's petition and the amendments thereto. Based on that review, and for the reasons set forth in this opinion, we conclude that, with the exception of the appellant's claims regarding the penalty phase of his trial, which we need not review, as set forth above, the circuit court properly summarily dismissed his claims. See Rule 32.7(d), Ala. R.Crim. P.

B.
The appellant also contends that his attorneys rendered ineffective assistance due to allegedly inadequate compensation. To the extent he challenges the statutory limit on attorney fees in capital cases, his argument is procedurally barred because he could have raised it at trial and on appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala. R.Crim. P. To the extent he raises an ineffective-assistance-of-counsel claim, he makes only the following bare allegations and conclusions:
"The failure to provide adequate funding to Mr. Duncan's court-appointed counsel curtailed his fundamental right to pre-trial investigation. The limitation on funding was particularly debilitating in Mr. Duncan's case, given the DNA evidence presented and relied upon by the *258 State and the media attention that this case attracted in the local community.
". . . The inadequate and statutorily limited compensation for penalty phase preparation made Mr. Duncan's sentence inconsistent with national standards for mitigation defense. Indigent defendants who faced the death penalty under Alabama's statute limiting out-of-court mitigation investigation were much more vulnerable than a non-indigent defendant or an indigent defendant facing identical charges in another jurisdiction. The limitation on state resources for Mr. Duncan's penalty phase defense allowed for an arbitrary and capricious verdict for the death penalty. Such a statutory system that severely prejudiced Mr. Duncan's penalty phase representation and violated his Eighth and Fourteenth Amendment rights. See Gregg v. Georgia, 428 U.S. 153, 199 (1976) (clarifying Furman v. Georgia, 408 U.S. 238 (1972) and holding that in order to minimize the risk that the death penalty is imposed on a capriciously selected group of offenders, the verdict has to be guided by particularized circumstances of the defendant). The lack of adequate funding for trial counsel curtailed Mr. Duncan's right to have counsel adequately investigate and prepare a mitigation case."
(C.R. 211-12.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan fails to plead or argue how Alabama's scheme of compensating attorneys for indigent capital defendants caused his trial counsel's performance to be deficient, prejudicial, or fall outside the wide range of reasonable conduct, other that the bare allegations that his rights to pretrial investigation and to present mitigation were curtailed. Therefore, this allegation is hereby summarily dismissed. Rules 32.3, 32.6(b), and 32.7(d), Ala. R.Crim. P."
(C.R. 12.) We agree with the circuit court's findings, and we adopt them as part of this opinion. The appellant makes the conclusory statement that his rights to a pretrial investigation and to present mitigation evidence were curtailed. However, he does not list any facts to show what specific pretrial investigation counsel would have done but for the alleged inadequacy of his compensation. Also, although he discusses, in subsequent parts of his petition, additional evidence that he believes counsel should have presented as mitigation evidence, he does not specifically plead that counsel did not present that evidence due to the alleged inadequacy of his compensation. Therefore, the appellant did not satisfy his burden of pleading as to this claim because he did not set forth specific facts to support his bare legal conclusions. See Rules 32.3 and 32.6(b), Ala. R.Crim. P. Accordingly, summary dismissal was proper as to this claim.

C.
The appellant next contends that his attorneys rendered ineffective assistance during the guilt phase of his trial.

1.
First, the appellant asserts that his case "is but a single example of [counsel's] ineffective and negligent representation of clients, as evidenced by a long record of bar disciplinary actions." (C.R. 214.) In relation to this claim, his entire argument in his petition consisted of the following:
"Between 1994 and 2001, the Alabama Bar Association disciplined [counsel] eighteen times for violating the Rules of Professional Conduct. These eighteen violations include failing to provide competent representation (Rule 1.1), neglecting legal matters entrusted to him (Rule 1.3), failing to keep clients reasonably *259 informed (Rule 1.4(a)), charging excessive fees (Rule 1.5), failing to refund an advanced payment that was not earned (Rule 1.16(d)), and engaging in conduct that adversely reflected his fitness to practice law (Rule 8.4(g)). As a consequence of these numerous violations, trial counsel received a private reprimand, public reprimands (both with and without general publication), and various suspensions, ranging in duration from 45 days to, most recently, two years. This record reflects a pattern of both unethical and ineffective representation. It was during this period that [counsel] represented Mr. Duncan in his capital trial, sentencing hearing, and direct appeal."
(C.R. 214.)
In its order dismissing the petition, the circuit court found as follows:
"In Adkins v. State, CR-99-0834, ___ So.2d ___, ___ (Ala.Crim.App. March 26, 2004), the Alabama Court of Criminal Appeals addressed his precise issue and held that `[t]he fact that [trial counsel] have been disciplined by the Alabama State Bar on unrelated matters has no bearing on their performance in Adkins's trial.' Other than a short recounting of some of the alleged violations and some of the alleged resulting reprimands, Duncan has provided the Court with absolutely no facts to show that, as a result of prior conduct in other unrelated cases, trial counsel was ineffective in his case. Duncan has provided no facts underlying the alleged violations, and other than a ball-park range of 1994 to 2001, no specific dates when the alleged violations occurred. Duncan appears to make his case simply by saying that if counsel was guilty of part collateral acts, he is guilty of the alleged present ineffectiveness. This is a principle of law routinely objected to by criminal defendants as being improper  prior bad acts cannot be used to establish the guilt of a defendant in the present case he is being tried for. This would be like the State attempting to use Duncan's prior bad acts to prove he committed capital murder, which certainly is not permitted. Duncan has clearly failed to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala. R.Crim. P. Therefore, this allegation is summarily dismissed."
(C.R. 13-14.) The record supports the circuit court's findings, and we adopt them as part of this opinion. The bare fact that counsel was disciplined in other cases does not establish that counsel rendered ineffective assistance in the appellant's case. The appellant did not satisfy his burden of pleading as to this claim. See Rules 32.3 and 32.6(b), Ala. R.Crim. P. Therefore, summary dismissal was proper as to this claim.

2.
Second, the appellant asserts that counsel did not ensure his presence at all stages of the proceedings against him. In his petition, he alleged:
"Although both state and federal law clearly guarantee the defendant the right to be present at all stages of the criminal proceedings against him, Mr. Duncan was absent from a key pre-trial hearing on his Motion to Suppress his custodial statement. (S. 128) The prosecutor, in fact, after noting that only one co-defendant was present, asked if `the other defendants [were] waiving their right to be present.' (S. 128) During this hearing, not only was Mr. Duncan absent, but his counsel failed to represent him, stating `I'd just like to listen.' (S. 128) In acting only as an observer at a key proceeding, trial counsel abdicated his responsibility to represent Mr. Duncan. Mr. Duncan's absence and his trial *260 counsel's explicit lack of representation are clear violations of Mr. Duncan's constitutional rights. See Illinois v. Allen, 397 U.S. 337, 338 (1970); Neal v. State, 59 So.2d 797 (Ala.1952)."
(C.R. 214-15.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan has provided the Court with no facts concerning the pretrial hearing, much less has he made any attempt to show how he was prejudiced as a result of his alleged absence from the pretrial hearing....
"... Duncan's failure to provide this Court with a factual basis for this allegation might best be explained by what he failed to include in his petition: that the pretrial hearing he alleges to have been absent from, such that his constitutional right were violated, was a hearing on a motion to suppress the statement of a codefendant Louis Mangione, at which no counsel other than Mangione's was present, much less were any of the other codefendants present, except Mangione. (Supp. R. at pp. 128-87) If nothing else, the true facts of this allegation show that counsel was going the extra mile by listening to testimony at the pretrial hearing of a codefendant. Duncan's trial counsel had no duty to attend a hearing addressing the admissibility of a codefendant's statement to police. Clearly, Duncan has failed to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d), Ala. R.Crim. P. Therefore, this allegation is summarily dismissed."
(C.R. 14-15.) The record from the appellant's direct appeal shows that, after hearing evidence concerning motions to suppress the appellant's and Grayson's statements, the trial court denied the State's motion to consolidate the cases against the four codefendants. Nevertheless, the appellant's counsel attended the hearing on codefendant Mangione's suppression motion. However, there was not any requirement that the appellant be present during that hearing. Therefore, the record supports the circuit court's findings, and we adopt them as part of this opinion. Accordingly, summary dismissal was proper as to this claim.

3.
Third, the appellant asserts that counsel did not "procure the necessary expert assistance to effectively challenge the State's case." (C.R. 215.)

a.
The appellant alleges that his counsel rendered ineffective assistance by not procuring a DNA expert. In relation to this claim, his entire argument in his petition consisted of the following:
"Trial counsel was ineffective for not procuring a DNA expert to challenge the State's expert who testified about the blood found on items admitted into evidence. It is well-established that DNA evidence has an awesome persuasive and prejudicial effect at a criminal trial, and for this reason, the standard for admission of DNA evidence must be strictly followed. Ex parte Hutcherson, 677 So.2d 1205, 1209 (Ala.1996) (holding that the erroneous admission of DNA evidence is never harmless).
"... For this reason, DNA evidence can only be admitted after meeting a rigorous set of standards guiding admission. The trial court must first find that: (1) the theory and technique (i.e., the principle and methodology) upon which the proffered DNA forensic evidence is based is `reliable'; and (2) the theory and technique upon which the proffered DNA forensic evidence is based is deemed `relevant' to understanding the evidence or to determining *261 a fact in issue. See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993); Turner v. State, 746 So.2d 355, 361 (Ala.1998).
". . . Compliance with the Daubert requirements can only be established after a full hearing outside the presence of the jury. Turner, 746 So.2d at 361. Though defense counsel made a pre-trial motion to exclude DNA evidence in Mr. Duncan's case, the trial court never held a hearing on this motion. (R. 101) If Mr. Duncan had been represented by effective counsel, he would have secured a hearing on the admissibility of the DNA evidence and a DNA expert, who would have assisted in challenging the admissibility and the reliability of the State's evidence."
(C.R. 215-16.)
In its order dismissing the petition, the circuit court found as follows:
"[The appellant] contends that trial counsel was ineffective for failing to retain a DNA expert to challenge the prosecution's expert who testified about `blood found on items admitted into evidence.'. . . Duncan offers no further support for this allegation. He does not identify a particular expert, much less what that expert would testify to, nor does he state how such an expert would have countered the State's evidence. This allegation fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed."
(C.R. 16.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Also, the record from the appellant's direct appeal shows that counsel thoroughly questioned the State's expert about the method of testing he used and questioned why he did not use a newer, more precise method of DNA testing. Therefore, summary dismissal was proper as to this claim.

b.
The appellant also alleges that his counsel rendered ineffective assistance by not procuring an investigator or social worker. In relation to this claim, his entire argument in his petition consisted of the following:
"Trial counsel failed to obtain the assistance of an investigator or social worker to uncover exculpatory evidence, examine the State's evidence, interview the State's witnesses and potential defense witnesses, and otherwise assist in the development of a viable defense. As a result, trial counsel lacked the necessary information to make important decisions about the defense strategy. See Wiggins [v. Smith], 123 S.Ct. [2527] at 2536 [(2003)]. This lack of investigation was unreasonable and prejudiced Mr. Duncan."
(C.R. 216-17.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan has provided the Court with absolutely no facts in support of his allegation. Duncan fails to identify .. . any exculpatory evidence that could have been uncovered or what the examination of the State's evidence or interviews with State witnesses would have revealed. Further, Duncan fails to identify what `viable defense' would have been developed with assistance. The Court finds that [this allegation] fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, this allegation is summarily dismissed."
(C.R. 16-17.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Also, in support of a post-trial motion for permission for a third *262 person to interview the appellant, counsel asserted:
"I am requesting permission for Dr. Marjie Britz to interview Trace R. Duncan in my presence at Holman Prison on Friday, July 21, 1996....
"Dr. Marjie Britz worked on this case for over a year. She directly assisted on a full time paid basis during the trial on the Motion to Transfer Trace R. Duncan for trial in the Circuit Court, where he was later convicted.
"... She was instrumental in forming the trial strategy that was used at the Motion to Transfer trial, and which was planned, but not used, at the Circuit Court level."
(A.C.R. 178.) Based on this affidavit, it appears that counsel did have some expert assistance in preparing for the trial. For these reasons, summary dismissal was proper as to this claim.

c.
The appellant further alleges that his counsel rendered ineffective assistance by not procuring a mental health expert. In relation to this claim, his entire argument in his petition consisted of the following:
"Trial counsel was ineffective for not obtaining a mental health evaluation of Mr. Duncan. Mr. Duncan's long history of academic, behavioral, and emotional problems  combined with serious substance abuse  were more than adequate to serve notice to any reasonably competent counsel that mental health defects likely played a role in the offense. Counsel's failure to request such an evaluation was clearly ineffective and prejudiced Mr. Duncan."
(C.R. 217.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan does not identify in his petition any particular `mental health' expert, proffer what that expert would have testified about at trial. This is a bare assertion with absolutely no factual basis, followed by a bold conclusion that counsel was ineffective. The Court finds that [this allegation] fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, this allegation is summarily dismissed."
(C.R. 17.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

d.
The appellant finally alleges that his counsel rendered ineffective assistance by not procuring an expert on the effects of drug and alcohol use. In relation to this claim, his entire argument in his petition consisted of the following:
"Defense counsel was ineffective for failing to procure an expert on the effects of drug and alcohol use to present evidence in support of the charge of manslaughter over capital murder. While evidence had been presented that Mr. Duncan was drinking on the night of the crime (R. 768), there was no evidence as to what effect this drinking would have on his actions. If defense counsel would have called an expert in this area, the jury would have been informed of the potentially serious effects of drugs and alcohol on Mr. Duncan's perceptions. This evidence would have supported a finding of manslaughter, making its absence prejudicial to Mr. Duncan."
(C.R. 217-18.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan has failed to identify . . . any expert in any particular field by name or proffer to the Court what such an expert *263 would have testified about at trial. There was ample testimony that Duncan had been drinking and smoking marijuana on the night of the murder. Because there was evidence of intoxication, the Court instructed the jury on [the] issue of intoxication and the lesser-included offense of manslaughter. (R. 875-878) Certainly 12 citizens, utilizing their common sense, could have determined that drinking alcohol and smoking marijuana could cause an individual to become intoxicated. Duncan has failed to plead any facts ... that, if true, would establish an expert on the effects of alcohol and drug would have benefited his defense. The Court finds that Duncan has failed to plead any facts establishing that counsel's performance was deficient or that he was prejudiced as required by Strickland. Rule 32.6(b), Ala. R.Crim. P. Therefore, the allegation ... is hereby summarily dismissed."
(C.R. 18-19.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

4.
Fourth, the appellant asserts that counsel did not secure a fair and impartial jury.

a.
The appellant alleges that counsel rendered ineffective assistance by not moving for a change of venue. In relation to this claim, his entire argument in his petition consisted of the following:
"In Mr. Duncan's case, there was evidence of [presumed and actual] prejudice. The crime was widely publicized in all forms of media, saturating the community with accounts of the crime. This coverage was sensationalist, including speculation about cannibalism and satanic worship. In addition, Carey Dale Grayson, one of Mr. Duncan's co-defendants, provided an interview to the press before Mr. Duncan's trial. In addition to the `presumed prejudice,' there was also actual prejudice. Twenty-eight of the jury venire members responded affirmatively when asked if they had heard about this case from the media."
(C.R. 218-19.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan has failed to include any facts in his petition to show that his trial counsel could have presented evidence sufficient to warrant a change of venue. Rather, he has simply [made] bare allegations that there was prejudicial publicity and that this publicity biased the jurors, such that he could not receive a fair trial. See Henderson v. State, 612 So.2d 1256, 1258 (Ala.Crim.App.1992) (holding that `[a] bare allegation is not sufficient to prove that the defendant was actually prejudiced or that the community was so saturated with prejudicial publicity as to render the trial setting inherently suspect'). Further, newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim. App.1978). In Irvin v. Dowd, 366 U.S. 717, 723 (1961), the Supreme Court explained that it is sufficient if a juror can lay aside his impression or opinion and render a verdict based on the evidence presented at trial. It is not necessary that jurors be totally ignorant of the facts of the case and the issues involved.
"Duncan bases his allegations of presumed prejudice and actual prejudice on the fact that there was some media coverage of the event, although he has not identified any details of that coverage. He also relies on a statement allegedly made by co-defendant Grayson to the press, but has failed to disclose the substance *264 of the statement, when it was made, and how it affected any specific juror. Although Duncan makes note that some twenty-eight potential jurors indicated during voir dire that they had heard about the case, he has not identified any juror who served on his jury who was biased as a result of that knowledge. In fact, the Court and the parties questioned individually any jurors who indicated pretrial knowledge of the case during voir dire. They indicated that they could set aside any prior knowledge and render a verdict based solely on the evidence presented at trial. The Court excused those veniremembers who said they were unable to put aside any pretrial knowledge. The Court finds that [this allegation] fails to meet specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed."
(C.R. 19-21.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

b.
The appellant also alleges that counsel rendered ineffective assistance by not securing sequestration of the jury. In relation to this claim, his entire argument in his petition consisted of the following:
"Trial counsel did not adequately seek a fully sequestered jury. The facts of this case produced widespread media coverage. Twenty-eight of the original veniremembers acknowledged having heard or seen media coverage of the crime. Though time had elapsed between the crime and the trial, media coverage increased with the beginning of the trial, especially since Mr. Duncan was the first of four co-defendants to be tried.
"... Despite the need to sequester the jury, defense counsel filed a one-page, boilerplate motion to sequester the jury on September 27, 1995. There was not a single basis in fact or law to support the motion. In addition, there is no record of any oral argument or judicial ruling on the motion.
". . . Finally, during voir dire, defense counsel assured one of the veniremembers that neither defense nor prosecution had requested that the jury be sequestered. (R. 95) Without a ruling on the record, trial counsel effectively surrendered the filed motion and anticipated not renewing his motion after voir dire. Defense counsel's ineffective motion, lack of diligence in securing a ruling, and assurance to a potential juror without the information provided during voir dire prejudiced Mr. Duncan. As a consequence to trial counsel's failure, Mr. Duncan was not tried by a fair and impartial jury in violation of his Constitutional rights."
(C.R. 219.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan does not identify the contents of the `increased' media coverage at the beginning of the trial, nor does he identify any juror who served on his jury who was prejudiced as a result of the media coverage. Instead, he simply concludes that, `[d]espite the need to sequester the jury, defense counsel filed a one-page, boilerplate motion to sequester the jury . . . [with] not a single basis in fact or law to support the motion. In addition, there is no record of any oral argument or judicial ruling on the motion.' (Petition at p. 12)
"... Duncan has proffered no facts in his petition that would rebut the prima facie presumption that he was not prejudiced by the court's failure to require *265 sequestration. Instead, he has presented to the Court only bare allegations of prejudice that, he says, resulted from trial counsel's failure to adequately seek a fully sequestered jury. He has not identified what more counsel should have done, much less that he would have been entitled to have the jury sequestered. The Court finds that the allegation... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed by the Court."
(C.R. 21-22.) The record supports the circuit court's findings, and we adopt them as part of this opinion. We further note that the record from the appellant's direct appeal indicates that, at counsel's request, the trial court thoroughly and repeatedly instructed the jurors not to discuss the case with anyone and not to have contact with any form of media about the case. Therefore, the record does not indicate that counsel rendered ineffective assistance in this regard. Accordingly, summary dismissal was proper as to this claim.

c.
The appellant further alleges that counsel rendered ineffective assistance by not removing biased jurors from the venire. In its order dismissing the petition, the circuit court found as follows:
"Duncan alleges that trial counsel failed to remove jurors who were partial and biased.... He specifically refers to veniremembers Barker, James, Sterling, and Plan. Duncan contends that Barker's `relationships with counsel and law enforcement officers and his status as an attorney' created `a high likelihood that other jurors deferred to [his] opinions during jury deliberations.' . . . This allegation is pure speculation . . . Duncan has pleaded no facts showing any bias or prejudice on the part of Mr. Barker. Rule 32.6(b), Ala. R.Crim. P.
"... Further, Barker emphatically stated that his relationships would not influence him or cause him to assign greater weight to the testimony of law enforcement officials. (R. 72-73). Barker also did not raise his hand when asked by the trial court if anyone had any bias or prejudice that would influence their verdict. (R. 8) Further, Barker stated during individual voir dire that he [had] no opinion about the guilt or innocence of the defendant, and that he wold enter the jury box and decide the case solely on the evidence presented at trial. This allegation is directly refuted by the record; thus, it fails to state a claim and does not establish that a material issue of fact or law exists as required by Rule 32.7(d). Therefore, this allegation is hereby denied by the Court. See Gibby v. State, 753 So.2d 1206, 1207-1208 (Ala.Crim.App.1999) (holding that a postconviction claim that is refuted by the record is without merit). Rule 32.7(d), Ala. R.Crim. P.
"... Duncan also alleges that venire-members James and Sterling should have been dismissed because they were close to law enforcement officials. Again, other than asserting that they had relationships with persons involved in law enforcement, Duncan has made no attempt to show that these jurors had any bias or prejudice against him. Both James and Sterling indicated during voir dire that none of their relationships with law enforcement would influence the weight they would give to the witnesses' testimony, nor would it influence their verdict. (R. 72-73)
"... Duncan also alleges that James and Sterling should have been removed from the venire because they [had] been exposed to pretrial publicity about the case. As noted above, a potential juror who has some knowledge about the case *266 is not necessarily biased or prejudiced upon entering the jury box. The real question is whether they can set aside that knowledge and decide the case solely on the evidence presented at trial. During individual voir dire James stated that she had read about the case when it first occurred, but that she did not remember an awful lot. (R. 191) She also stated that she had no opinion about the case, and that she could set aside what she knew and decide the case fairly and impartially. (R. 191).
". . . Similarly, Ms. Sterling said she had heard a news flash on the radio driving in for jury duty, but she had no opinion about the case. She said she could set aside any prior knowledge and decide the case on the evidence presented at trial. (R. 228). Clearly, Duncan's bold assertions of bias and prejudice[ ] against these jurors are directly refuted by the record. See Gibby v. State, 753 So.2d 1206, 1207-1208 (Ala.Crim.App. 1999) (holding that postconviction allegations directly refuted by the trial record are without merit). The Court finds that these allegations fail to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d). Therefore, these allegations are denied by the Court.
". . . Lastly, Duncan alleges that trial counsel was ineffective for failing to remove veniremember Plan because of her exposure to pretrial publicity and because she had known a murder victim. Like his other allegations of ineffectiveness for failing to remove jurors, this allegation is unsupported by any facts. It is a mere conclusion of bias and prejudice. Further, the record shows that Ms. Plan indicated that her limited exposure to the case (hearing on the radio that the cases were going to be tried) had no bearing on her ability to be a fair and impartial juror. (R. 225) She said that she would base her verdict solely on the evidence presented at trial. (R. 225) Ms. Plan also indicated during individual voir dire that knowing someone who was murdered  a fact she disclosed to the Court on her own  would not affect her ability to be fair and, again, that she would decide the case solely one the evidence presented at trial. (R. 225) The Court finds that the allegations about juror Plan fail to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d). See Gibby v. State, 753 So.2d at 1207-1208. Therefore, these allegations are denied by the Court.
"... In sum, Duncan has offered nothing more than bare allegations that the jurors ... were biased or prejudiced. The record is devoid of any evidence [of] bias or prejudice on the part of the jury. Further, the Court has no recollection of any fact that would [have] indicated these jurors were biased against Duncan. The Court finds that Duncan's allegations of juror bias are directly refuted by the record; therefore his allegations of ineffective assistance of counsel for failing to remove these jurors are without merit and are hereby denied."
(C.R. 22-25.) Based on our review of the jury selection proceedings, the record supports the circuit court's findings. Therefore, we adopt them as part of this opinion, and summary dismissal was proper as to this claim.

d.
The appellant finally alleges that counsel rendered ineffective assistance by not adequately presenting and arguing the Batson motion. In relation to this claim, his entire argument in his petition consisted of the following:

*267 "Trial counsel ineffectively presented a Batson motion. (R. 244); Batson v. Kentucky, 476 U.S. 79 (1986). In this motion, the only evidence presented by trial counsel was the State's use of eight out of fourteen strikes to remove Black veniremembers. Trial counsel failed to present evidence about the heterogeneity of these jurors, suggesting that race was the only characteristic they held in common. See Ex parte Branch, 526 So.2d 609, 622 (Ala.1987). Trial counsel failed to investigate or present evidence about the prosecutors' record of discrimination or the discriminatory type of questioning done on voir dire. Id. at 623. Trial counsel failed to note any disparate treatment of jurors of different races but with similar characteristics. Id. This failure to present evidence constitutes ineffective assistance of counsel. This prejudiced Mr. Duncan by denying him his constitutional right to a fair and impartial jury."
(C.R. 222-23.)
In its order dismissing the petition, the circuit court found as follows:
"[The appellant] has proffered the Court no facts in his petition to support his bare allegation that his constitutional rights have been violated. He has proffered no proof of disparate treatment, of race being the only factor shared by the jurors, or of the prosecutors' alleged history of discrimination. Duncan has failed to plead any facts that, if true, would establish trial counsel's performance was deficient or caused him to be prejudiced as required by Strickland; therefore, this allegation is hereby summarily dismissed by the Court. Rule 32.6(b), Ala. R.Crim. P."
(C.R. 26.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

5.
Fifth, the appellant asserts that counsel rendered ineffective assistance by conducting inadequate and inconsistent voir dire questioning regarding exposure to pretrial publicity and by not securing an expert to assist during the jury selection proceedings. In its order dismissing the petition, the circuit court found as follows:
"In support of this allegation, Duncan merely refers to the `pervasive and sensational media coverage' the case received, and then to several veniremembers who indicated that they had heard of the crime. Duncan simply concludes that counsel's questioning of these jurors was `minimal and inconsistent,' and that counsel had `no substantive follow-up.' ...
"... Again, Duncan has failed to support his allegation with any facts. Instead, he makes a bare assertion followed by a bold conclusion that his constitutional rights have been violated. Duncan fails to identify a single juror... that was biased or unfair based on their pretrial knowledge of the case. The mere fact that some of the jurors that sat for Duncan's trial had pretrial knowledge of his case is not enough to establish they were biased against him. See Ex parte Davis, 718 So.2d 1166, 1171 (Ala.1998). Certainly, he has not shown what `follow-up' questions should have been posed to the jurors he lists as being exposed to pretrial publicity, nor has he shown what their answers would have revealed had they been asked certain questions. Although Duncan contends that trial counsel should have retained an expert to help him conduct voir dire, he has not identified who that expert is, much less what they would have done to change the outcome of his case. It is hard to *268 imagine any jurors, when faced with the overwhelming evidence of Duncan's guilt, who would have reached a different verdict.
"... Further, of the veniremembers listed by Duncan in the petition whom he claims were biased, potential juror Barker clearly said that he had not formed an opinion as to the guilt or innocence of the defendant, and that he could base his verdict solely on the evidence presented at trial. (R. 139) Potential Juror Sherrod indicated during questioning by the Court that the case was vaguely familiar to her, but that she did not remember any details and that she had no opinion based on what she had seen or heard. (R. 122-23) Potential Juror Davis stated that she had not read or seen television accounts of the murder, but had `heard talk about it.' (R. 161) She said she knew nothing in particular, had no opinion about the case, and could be fair and impartial, rendering a verdict based solely on the evidence presented at trial. (R. 161-62) Potential Juror Ezelle said that she had heard about the case when it initially happened, and recently heard that the trial was starting, but that she had not formed any opinion based on what she had heard or read, and that she could be a fair and impartial juror. (R. 175-76)
"... Potential Juror Frye said that she had read about the case when it first happened, but that she had not followed it since then. (R. 178) She said she had formed no opinion about the case, and could be a fair and impartial juror. (R. 178) Likewise, Potential Juror Hester said she had heard about the case when it first happened, and recently that the trial was starting, but that she had formed no opinions about it, and could decide the case solely on the evidence presented at trial. (R. 182-83) Potential Juror Muir also stated that he had only read about the case when it happened, and that he had not formed any opinions about the case. He indicated he would be a fair and impartial juror. (R. 216-17) Potential Juror Noto stated the same  that he had formed no opinion and that he could be fair and impartial, deciding the case solely on the evidence presented at trial. (R. 218-19) Potential Juror O'Neal stated that she had heard someone talking about the case at work, but she had not formed any opinions based on what she heard. She said that she could base her verdict solely on the evidence presented at trial. (R. 223) Potential Juror Myrick also stated that she only vaguely remembered one of the defendants being from [Fultondale], but that she had formed no opinion abut the case. (R. 224) She, too, said she could render a fair and impartial verdict based solely on the evidence presented at trial. (R. 225) Neither the prosecution nor trial counsel asked any questions of these jurors when given an opportunity by the Court to do so, with the exception of Ms. O'Neal, whom the prosecutor asked only if she had been a witness in an unrelated case. (R. 222-23)
"... The Court also notes that of the other jurors individually questioned by the parties on exposure to pretrial publicity, trial counsel did question them further. When it was necessary, counsel further questioned certain jurors on pretrial publicity. See, e.g., Jurors Calamusa (R. 140-44); Coleman (R. 145-50); Copus (R. 151-55); Dillard (R. 169-75); Hayes (R. 181); Huggins (R. 188-91); Hood (R. 185-86); James (R. 193-95); Lewis (R. 198-200; 202-04); McConico (R. 206-09); and Vail (R. 232).
"... The Court finds that these allegations fail to meet the specificity and full factual pleading requirements of *269 Rule 32.6(b); therefore, they are summarily dismissed."
(C.R. 27-30.) The record from the appellant's direct appeal indicates that the trial court and the attorneys conducted individual voir dire examination of the veniremembers who had been exposed to pretrial publicity and thoroughly questioned them regarding the extent of their exposure and their ability to be fair and impartial. With regard to many of the veniremembers, after specific and extensive questioning by the trial court and the prosecutor, there simply was not anything further the appellant's counsel could have asked. Therefore, the record supports the circuit court's findings, and we adopt them as part of this opinion. Accordingly, summary dismissal was proper as to this claim.

6.
Sixth, the appellant asserts that counsel rendered ineffective assistance by not objecting to the court's promise to a juror that the trial would be over by the end of the week. In relation to this claim, his entire argument in his petition consisted of the following:
"When one of the jurors expressed concerns over her ability to serve as a juror for more than one week, the judge reassured her twice, saying, `We're not going to go into next week,' and `We'll be through this week.' (R. 214, 215) These remarks were improper, since the length of the trial and deliberations was unpredictable. The juror could draw inferences from such remarks about the judge's assessment of the strength of the State's evidence, the guilt or innocence of Mr. Duncan, and the level of certainty as to a proper penalty. Because trial counsel did not object to such a prejudicial comment, this was ineffective assistance of counsel. Trial counsel's failure to object was prejudicial to Mr. Duncan, since it denied him the right to a fair and impartial jury."
(C.R. 225.)
In its order dismissing the petition, the circuit court found as follows:
"This allegation is pure speculation, with no supporting facts that the juror was influenced by the Court informing her that the trial would not continue into the following week. In fact, it did not. The trial began on October 30 with jury selection, and ended on November 3 with the jury's sentencing recommendation. Having presided over numerous capital murder trials, the Court would have some idea how long a particular case will last, based on many factors, including conversations with the attorneys and the number of witnesses who will testify. Duncan seems to be reaching to conclude, based on the Court's comment that the trial would not go beyond the week, that the comment, in any conceivable way, [implied] anything about the Court's opinions on the case, the defendant, or the punishment. This conclusory allegation clearly fails to meet the full factual pleading requirements of Rule 32.6(b). Therefore, this allegation is summarily dismissed by the Court."
(C.R. 30-31.) The record supports the circuit court's findings, and we adopt them as part of this opinion. We further note that the trial court also explained to the veniremember that "[t]here is always a possibility we might go into Saturday on some occasions." (A.R. 215.) Accordingly, summary dismissal was proper as to this claim.

7.
Seventh, the appellant asserts that counsel rendered ineffective assistance during his opening statement. In its order dismissing the petition, the circuit court found as follows:

*270 "Duncan makes two allegations. Duncan first contends that counsel was ineffective during the opening state[ments] because he `summarized' the prosecution's evidence. He contends this `rehashing' of the prosecution's case was prejudicial, because `the jury heard the evidence from Mr. Duncan's only voice in the courtroom  his attorney.' ...
Duncan has failed to show that counsel's summary of what he expected the evidence to show, which was not the same as the prosecution's expectation of the evidence, was deficient, much less how the outcome of his trial would have been different. He has not offered any examples of what counsel should have said in opening statements, which, in fact, is the proper place to tell the jury what the defense expects the evidence to show. It is not a place for argument.
"... Trial counsel was faced with overwhelming evidence of his client's guilt, and a review of the opening statement shows he did with it what he could. Duncan has failed to meet his burden of pleading specific facts that would establish deficient performance or prejudice as required by Strickland; therefore, this allegation is summarily dismissed by the Court. Rule 32.6(b), Ala. R.Crim. P.
"... Duncan also contends . . . that trial counsel was ineffective for telling the jury that Duncan would take the stand to testify. Duncan fails, however, to include in his petition the fact that counsel immediately said he is not required to and may choose not to. (R. 268) Although Duncan did not testify at the guilt phase, he did, in fact, testify at the penalty phase before the jury. (R. 939-1108) During opening statements, counsel did not say he would testify at the guilt phase, just that he might tell his version of events  which he did. Further, the Court properly instructed the jury that Duncan was not required to take the stand at the guilt phase in his own defense. (R. 889-990) The jury was instructed to draw no inferences as to his guilt or innocence if he did not take the stand. (R. 890) Jurors are presumed to follow the trial court's instructions. See Wilson v. State, 777 So.2d 856, 893 (Ala.Crim.App.1999).
"... The court finds that this allegation... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily [dismissed]."
(C.R. 31-32.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

8.
Eighth, the appellant asserts that counsel rendered ineffective assistance by not adequately challenging the State's investigation and presentation of evidence.

a.
The appellant alleges that counsel did not adequately contest the admissibility of irrelevant and prejudicial evidence. Specifically, he asserts that counsel did not adequately challenge the admission of his custodial statement, DNA evidence, physical evidence, and photographs and did not adequately move for a judgment of acquittal at all appropriate times.
In its order dismissing the petition, the circuit court found as follows:
"Duncan contends that trial counsel failed to `adequately challenge the admission of [his] custodial statement.'... Although he runs down a list of circumstances  that he was a minor and could not waive his rights, that the statement was taken during the early morning hours, that he had been found *271 asleep in a car, and that a portion of the statement was not written by him  these circumstances, either alone or combined, do not establish that the statement was involuntary. In fact, the testimony at trial from the two officers who took the statement shows that the statement was clearly voluntary. The testimony at trial showed that Duncan was read his rights, that he did not appear to be intoxicated or incapacitated, that he was not threatened or coerced into giving a statement, and that he waived his right to have his parents present during the questioning. (R. 452-505); see Ex parte Smith, 611 So.2d 1023, 1025 (Ala.1992) (holding that Smith, who was 15 years old, could waive his Miranda rights and his right to have an attorney or parent present during questioning by police).
"... Duncan has failed to provide any facts to show that his statement was anything but voluntary. He has failed to meet his burden of pleading under Rules 32.3 and 32.6(b); therefore, this allegation ... is hereby summarily dismissed by the Court.
"... Duncan further contends that trial counsel was ineffective for failing to `adequately' challenge the admission of DNA testing (DQ alpha testing). Although he makes this bare assertion, he has provided the Court with no facts to show how trial counsel could have mounted a challenge to the admission of the evidence. Duncan relies on Turner v. State, 746 So.2d 355 (Ala.1998), contending that trial counsel should have secured a hearing on the DNA evidence outside the jury's presence. The Court notes, however, that Turner, was not decided until four years after Duncan's trial and, thus, is not controlling. It is a mere conclusion that his constitutional rights were violated. Duncan also contends that trial counsel should have requested the assistance of a DNA expert, but again has failed to identify any expert, much less how that expert would have challenged the evidence. The Court finds that this allegation ... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed.
"... Duncan alleges that trial counsel was ineffective for failing to object to items of evidence containing his blood that were found inside a codefendant's car. Again, Duncan has failed to show how he was prejudiced  that a challenge would have been successful and would have changed the outcome of his trial. He also has not shown deficient performance. The Court also finds that, because the items were recovered from a codefendant's car, Duncan had no standing to challenge their admission. `Counsel cannot be said to be ineffective for not filing a motion for which there is not legal basis.' Boyd v. State, 746 So.2d 364, 397 (Ala.Crim.App.1999). The Court finds that the allegation ... fails to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d); therefore, it is hereby denied.
"... Duncan contends that counsel failed to `adequately' object to the admission of gruesome and duplicative photographs. The one photograph he refers to is an enlarged photograph of the victim. He has offered no supporting facts to show what more counsel could have done, or how the outcome of his trial would have been different. Further, the substantive allegation was addressed and rejected on direct appeal by the Alabama Court of Criminal Appeals. Duncan v. State, 827 So.2d at 850-52. Because the underlying substantive issue was raised and addressed on direct appeal, Duncan cannot relitigate *272 it under the guise of ineffective assistance of counsel. See Williams v. State, 783 So.2d 108, 133 (Ala.Crim.App. 2000) (holding that a finding of no plain error on direct appeal precludes a finding of prejudice under Strickland). The Court finds that the allegation ... fails to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d); therefore, it is hereby denied.
". . . Duncan contends `[t]hat counsel failed to adequately move for a verdict of acquittal and to exclude the evidence after both the State and defense rested. (R. 764) Trial counsel failed to state grounds for the motion, and, then, failed to even obtain a ruling on the motion. This was ineffective assistance of counsel.'... This is Duncan's entire argument to the Court. Duncan fails to proffer in his petition how trial counsel's motion was inadequate or what additional grounds trial counsel could have raised that would have caused a different outcome. The Court finds that the allegation ... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby dismissed."
(C.R. 33-37.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Moreover, we note that our review of the record from the appellant's direct appeal reveals that trial counsel thoroughly cross-examined the State's expert about the testing on bloodstains, including questioning why he had not used a newer, more precise method of DNA testing. Also, the record does not reveal that there was any basis for suppressing the appellant's statement, the physical evidence, or the photographs. Finally, as the circuit court noted, the evidence of the appellant's guilt was overwhelming. Therefore, there was not any basis for the trial court to grant a motion for a judgment of acquittal for the appellant. For these reasons, the record from the appellant's direct appeal refutes the allegation that trial counsel rendered ineffective assistance in this regard. Accordingly, summary dismissal was proper as to this claim.

b.
The appellant also alleges that counsel did not adequately cross-examine State witnesses. In its order dismissing the petition, the circuit court found as follows:
"Duncan contends that trial counsel was ineffective `for failing to conduct an adequate cross-examination of many State witnesses.' ... The allegation, in its entirety, is as follows: `For example, trial counsel failed to cross-examine Brian Castleberry (R. 313) and Raymond White (R. 656). This failure to challenge the State's theory of the crime constituted ineffective assistance of counsel. Since trial counsel provided the jury with no reason to question this theory, this ineffectiveness prejudiced Mr. Duncan.' ...
"... Duncan fails to proffer in his petition what testimony could have been elicited from these two witnesses on cross-examination that might have changed the outcome of his trial. Although he refers to counsel's failure to `challenge the State's theory' and thus, counsel's failure to `provide[] the jury with [a] reason to question this theory,' Duncan does not identify what challenge counsel should have mounted during his cross-examination, much less what testimony on direct examination of these witnesses required challenging.
"... Moreover, the Court was present during the testimony of Castleberry and White. Castleberry was one of the rock climbers who discovered the victim's *273 body at Bald Rock Mountain. He testified only to finding the body and to calling the police immediately after his discovery. Similarly, White, a forensic investigator employed by the Alabama Department of Forensic Sciences, testified only that he was called to the scene after the victim was discovered and that, after arriving at the scene, took several photographs for the pathologist. White also testified that he recovered the body, secured it in a State forensics wagon, and transported it to the morgue. He also said that he maintained custody of the body until he turned it over to the pathologist. Both witnesses' testimony was unremarkable and dealt with the discovery and chain of custody of the victim's body. Castleberry's and White's testimony certainly did not involve any `theory' of the case requiring challenging. The Court cannot imagine what questions trial counsel could have asked that would have had any bearing on the outcome of Duncan's case.
"... Duncan has failed to plead any facts that would establish deficient performance or prejudice as required by Strickland. The Court finds that the allegation ... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed."
(C.R. 37-38.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

9.
Ninth, the appellant asserts that counsel rendered ineffective assistance by not objecting to prosecutorial misconduct.
In its order dismissing the petition, the circuit court found as follows:
"Duncan makes several allegations that trial counsel were ineffective for failing to object to alleged instances of prosecutorial misconduct. In his first allegation,. . . Duncan contends that trial counsel failed to object to the prosecution's alleged misstatement of the law on accomplice liability made during voir dire. Duncan's only attempt at showing prejudice is to conclude that, because there were four co-defendants and the degree of his participation was contested, he was prejudiced by the prosecutor's alleged misstatement.
"... The prosecution's example on accomplice liability occurred during voir dire, and was prefaced with the prosecutor stating that the Court would instruct them on the law of accomplice liability. Further, the Alabama Court of Criminal Appeals addressed Duncan's argument that there was no particularized intent on his part to participate in the murder. The Criminal Court [of] Appeals rejected Duncan's argument, holding that the Court `clearly instructed the jury that to be convicted of capital murder as an accomplice, the appellant had to possess a particularized intent to kill. Further, the Court correctly instructed the jury with regard to accomplice liability.' Duncan v. State, 827 So.2d at 846-49. `Because the State presented sufficient evidence connecting the appellant with the commission of the offense and because the trial court properly charged the jury as to [the] necessary intent, the appellant's argument is without merit.' Id. at 849. Further, the jury was instructed that the comments of the attorneys are not evidence in the case, and that the Court was the source of the law. (R. 776) The court instructed the jury that what the lawyers may say, may not be an accurate description of the law, `but I will give you those principles of law which you have to follow in this case *274 at the conclusion of their summations.' (R. 776-77). Jurors are presumed to follow the trial court's instructions. Wilson v. State, 777 So.2d at 893.
"... The Court finds that Duncan has failed [to] plead any facts ... that, if true, would establish trial counsel's performance was deficient or caused him to be prejudiced as required by Strickland; therefore, this allegation is hereby summarily dismissed. Rules 32.3 and 32.6(b), Ala. R.Crim. P.
"... Duncan contends that trial counsel were ineffective for failing to object to testimony from the victim's mother, which, according to Duncan, was improper victim-impact evidence. Duncan has failed to show deficient performance and prejudice. He has not even attempted to show how the absence of the few details provided by the victim's mother, who served primarily as a time-line witness for the murder, would have changed the outcome of his trial. The Court finds that this allegation fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed.
"... Duncan makes two allegations  that counsel was ineffective for failing to object to the prosecutor repeating a question to a witness and for failing to adequately object to an alleged comment by the prosecutor on Duncan's right to remain silent. Both of the underlying substantive issues were addressed and rejected by the Alabama Court of Criminal Appeals on direct appeal. Duncan v. State, 827 So.2d at 857-60. Duncan cannot relitigate these allegations under the guise of ineffective assistance of counsel. See Williams v. State, 783 So.2d at 133. The Court finds that the allegations ... fail to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d); therefore, they are hereby denied."
(C.R. 38-41.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

10.
Tenth, the appellant asserts that counsel rendered ineffective assistance by not formulating and arguing any reasonable theory of defense. In its order dismissing the petition, the circuit court found as follows:
"Duncan alleges that trial counsel failed to `set forth a viable theory of defense that would have allowed the jury to acquit [him] of capital murder.' ... Duncan fails, however, to suggest[ ] what `viable' theory trial counsel should have presented, in light of the overwhelming evidence against him. He takes issue with trial counsel portraying the co-defendants as Satanists, contending that the portrayal did not provide him a defense.... The Court finds, however, that distancing Duncan from Satanic worship was reasonable. Duncan had denied any `major role' in the beating of the victim  he contended he only kicked her a few times in the head  and said he was asleep in the car when two of the codefendants returned to the victim's body to mutilate it, stabbing it over 180 times, removing organs and eating them, and removing fingers to thwart identification and to keep as souvenirs. Trial counsel attempted to portray codefendant Grayson as the older, instigator and leader, who was a Satanist wanting to sacrifice the victim to Satan. It would certainly be in Duncan's best interests to distance himself from an interest in the occult and Satanism.
"... Again, Duncan has failed to proffer any facts showing prejudice, and has *275 failed to support his contention that there existed a viable defense trial counsel could have presented and what the defense would have been. As noted above, the jury was instructed that the comments of the attorneys were not evidence. Trial counsel was presented with overwhelming evidence of guilt against his client, which included Duncan's own incriminating statement. The Court finds that Duncan has failed to meet his burden of pleading any facts that, if true, would establish counsel's performance was deficient and that he suffered prejudice as required by Strickland. Therefore, the allegation ... is hereby summarily dismissed. Rules 32.3 and 32.6(b), Ala. R.Crim. P."
(C.R. 41-42.) We further note that the record from the appellant's direct appeal indicates that, against the recommendation of counsel, the appellant chose not to testify during the guilt phase of the trial. Nevertheless, counsel was able to interject his theory that two codefendants were Satanists, instigated the murder, committed most of the acts against the victim, and threatened to kill the appellant if he told what had happened. The record supports the circuit court's findings that counsel's actions were reasonable, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

11.
Eleventh, the appellant asserts that counsel rendered ineffective assistance by presenting a prejudicial closing argument. In its order dismissing the petition, the circuit court found as follows:
"Duncan contends that trial counsel presented a prejudicial closing argument, because counsel spent some portion of his argument focusing `on the fact that the victim had not died from strangulation  the original investigation theory  but from head wounds.' ... Duncan concludes that this argument was prejudicial, because he had admitted to kicking the victim in the head. A review of that portion of counsel's argument  which the jury was instructed was not evidence (R. 776)  was counsel's attempt to explain the second portion of Duncan's statement to police, which, unlike the first portion of his statement  was not handwritten by Duncan. Counsel was reasoning that the second, more incriminating part of the statement was coerced by police in an attempt to get Duncan's version of events to coincide with the coroner's initial cause of death  strangulation. Duncan initially said that he heard two loud smacks (supposedly the beer bottles thrown at the victim by the codefendants), saw the victim running, and then went to sleep in the car, frightened for his life. This version of events was the same version he testified to at the penalty phase. Although he admitted to kicking the victim  most probably out of necessity, considering the victim's blood was found on the tip of his boots  he said she was unconscious when he did so. Counsel was attempting to explain the contradiction in his statement, which counsel argued was the result of police making Duncan conform his story to match the suspected cause of death of the victim.
"... Duncan's only attempt at demonstrating prejudice is to argue that `because of the important role of closing argument in persuading the jury,' the argument was highly prejudicial.... Clearly, Duncan has failed to plead any facts establishing deficient performance or that the outcome of his trial would have been different but for the comments made by counsel during closing arguments. The Court finds that the allegation ... fails to meet the specificity *276 and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed."
(C.R. 42-44.) The record supports the circuit court's findings, and we adopt them as part of this opinion. We further note that the record from the appellant's direct appeal establishes that, during his closing argument, counsel also argued that the evidence was not sufficient to support a conviction because the appellant did not kidnap, rob, or aid the codefendants in committing the murder; that the appellant was too drunk to know what was happening; and that the codefendants could have committed the murder as a Satanic ritual. He also challenged the State's evidence by questioning whether the officers coerced the appellant to change his statement and by questioning why newer, more precise DNA testing had not been used. Finally, he portrayed the appellant as someone who was drunk and who could have been manipulated by the codefendants and their alleged connections to the occult. Based on our review of the record and the circuit court's findings, we conclude that the appellant has not satisfied his burden of pleading as to this claim. Therefore, summary dismissal was proper as to this claim.

D.
The appellant further contends that his attorneys rendered ineffective assistance during the penalty phase of his trial. However, based on Roper, as set forth above, those arguments are moot.

E.
Finally, the appellant contends that the circuit court erred in not considering his ineffective-assistance claims cumulatively. However, even assuming that this argument is properly before this court, it is without merit. In Coral v. State, 900 So.2d 1274, 1284 (Ala.Crim.App.2004), we stated:
"Coral also argues in this section of his brief that `[a]s long as some portions of the claim meets the sufficiency requirements of Rule 32, there is no rationale for the argument that other portions of the claim do not.' (Coral's brief, at p. 26.) However, the claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is a independent claim that must be sufficiently pleaded. As the Supreme Court of Pennsylvania stated in Commonwealth v. Lambert, 568 Pa. 346, 797 A.2d 232 (2001):
"`[S]peaking in the context of "layered" ineffectiveness claims, . . . although some latitude may be afforded in the pleadings, PCRA [Post Conviction Relief Act] counsel generally "must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claims asserted with respect to each individual facet of a layered ineffectiveness claim ..."'
"568 Pa. at 364, 797 A.2d at 242 (quoting Commonwealth v. Williams, 566 Pa. 553, 566-67, 782 A.2d 517, 525 (2001) (emphasis omitted)). See also Bracknell, supra."
Therefore, the circuit court did not err in considering each ineffective-assistance claim individually. Moreover, even reviewing the claims cumulatively, we conclude that the appellant is not entitled to relief.

III.
The appellant's third argument is that the sentence of death, which was imposed for a crime he committed when he was 17 years old, constitutes cruel and unusual punishment and violates several international treaties and covenants. Based on Roper, as set forth above, we are compelled *277 to agree and to remand this case to the circuit court for resentencing.

IV.
The appellant's fourth argument is that the State did not comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In relation to this claim, his entire argument in his petition consisted of the following:
"The State failed to provide Mr. Duncan with important exculpatory and impeachment evidence. It is well established that a defendant is entitled to exculpatory evidence in a criminal proceeding. The State's suppression of this material violated Mr. Duncan's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, the Alabama Constitution, and Alabama State Law.
"... In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court stated that `the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilty or to punishment, irrespective of the good faith or bad faith of the prosecution.' Id. at 87. Evidence favorable to the defense includes evidence that would affect the jury's determination of the credibility of the witnesses. Giglio v. United States, 405 U.S. 150 (1972). Ex parte Womack, 541 So.2d 47 (Ala.1988); Ala. R.Crim. P. 16.
"... In the context of a capital proceeding, the state is under a heightened obligation to provide discovery to the defendant. This is because the possibility of a death sentence is a special circumstance that places an increased obligation on the state. Ex parte Monk, 557 So.2d 832 (Ala.1989). The mandate to turn over favorable evidence extends to both the determination of guilt or innocence and the sentencing proceeding. Brady, 373 U.S. at 88. The withholding of favorable evidence is grounds for the reversal of a death sentence. See Brady, 373 U.S. at 87; Ex parte Willingham, 695 So.2d 148 (Ala.1996) (reversing the conviction where the state failed to provide defense counsel with information that could impeach a state witness); Ex parte Brown, 548 So.2d 993 (Ala.1989) (reversing the conviction where the state failed to disclose evidence uncovered by the state after the discovery process had been completed). The State has an obligation to provide both exculpatory evidence and evidence that can be used to impeach or otherwise challenge the veracity of a witness. United States v. Bagley, 473 U.S. 667 (1985).
"... Despite the heightened obligation upon the state in Mr. Duncan's capital proceeding, the state failed to provide exculpatory evidence to Mr. Duncan. The Brady failures prevented Mr. Duncan from preparing and presenting an effective defense, and denied appellant his constitutional rights as protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution."
(S.C.R. 99-100.)
In its order dismissing the petition, the circuit court found as follows:
"In Boyd v. State, 913 So.2d 1113 (Ala. Crim.App.2003), the Alabama Court of Criminal Appeals held, while addressing a Brady allegation, that:
"`[T]he circuit court correctly ruled that Boyd's Brady claim is procedurally barred. Boyd did not assert in his petition that the claim was based on newly discovered evidence or that any alleged suppression by the State continued until such time as the claim *278 could not have been raised at Boyd's trial. Therefore, the circuit court correctly found the claim to be procedurally barred under Rule 32.2(a)(3), Ala. R.Crim. P., because it could have been raised at trial, but was not. Moreover, the claim is procedurally barred under Rule 32.2(a)(5), Ala. R.Crim. P., because it could have been raised on direct appeal, but was not.'

"Id. at 1142 (emphasis added). Like Boyd, Duncan failed to assert in his petition that this allegation was based on newly discovered evidence, or that the alleged suppression continued until such a time that the claim could not have been raised at trial. Thus, this allegation is procedurally barred, because it could have been, but was not, raised at trial or on appeal. Rules 32.2(a)(3) and (5).
"... Moreover, Duncan has failed to meet his burden of pleading under Rule 32.3 and 32.6(b), Ala. R.Crim. P. Duncan fails to identify in Part II of his petition a single specific item allegedly withheld by State. The Court finds that Duncan's Brady allegation in Part II completely fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily [dismissed]."
(C.R. 59-60.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief on this ground.
In a related argument, the appellant argues that he could not plead this claim with any greater specificity because the circuit court denied his request for discovery of trial and appellate counsel's files and did not allow him discovery of the district attorney's files. With regard to discovery in Rule 32 proceedings, the Alabama Supreme Court has held:
"We agree with the Court of Criminal Appeals that `good cause' is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar `good-cause' or `good-reason' standard for the postconviction discovery process. See [State v.]Marshall, [148 N.J. 89, 690 A.2d 1 (1997)]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey's Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that `an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.' Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985).
"We emphasize that this holding  that postconviction discovery motions are to be judged by a good-cause standard  does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding *279 for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (`a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala. R.Crim. P., which states:
"`The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'"
Ex parte Land, 775 So.2d 847, 852-53 (Ala. 2000) (footnote omitted).
In this case, the appellant did not show good cause why the circuit court should have granted his motion for discovery.[1] For the reasons set forth herein, the appellant did not allege sufficient facts that, if true, would have established that he was entitled to relief on his Brady claim. Further, in his motion for discovery, he alleged only that the requested discovery was necessary to support his ineffective-assistance-of-counsel claims. Thus, it appears that he was simply attempting to fish through the requested information to find support for his ineffective-assistance claims. Therefore, the circuit court did not err in this regard.

V.
The appellant's fifth argument is that he was denied a fair trial because several jurors failed to disclose crucial evidence and because the jury improperly considered extraneous evidence. In relation to this claim, his entire argument in his petition consisted of the following:
"During voir dire, several jurors failed to disclose critical evidence, despite unambiguous questioning. Additionally, the jury looked beyond the evidence and testimony presented at trial, and thereby denied Mr. Duncan a fair trial and reliable sentence.
"... It has been long-recognized that a defendant is entitled to receive truthful answers from jurors, and when a juror fails to truthfully respond during voir dire, reversible error occurs. See State v. Gilbert, 568 So.2d 876 (Ala. Crim.App.1990) (holding that where a juror did not disclose that she knew someone who had been sexually abused, the conviction and sentence must be reversed); Abercrombie v. State, 574 So.2d 879 (Ala.Crim.App.1990) (holding that where juror did not disclose that she had an interest in the conviction of the defendant, probable prejudice is shown, and the conviction must be reversed); Clark v. State, 551 So.2d 1091 (Ala.1989) *280 (holding that where a juror failed to disclose that he had served on a previous case, reversible error occurs). Indeed, the burden of the defendant is light; Mr. Duncan need only show that he might have been prejudiced by the juror's nondisclosure during voir dire. Clark v. State, 551 So.2d 1091 (Ala.1989); Ex parte Troha, 462 So.2d 953 (Ala. 1984). Moreover, it has been discovered that juror Annie Hester considered extraneous evidence during the trial of the case. Ms. Hester left the courthouse each day following the presentation of the evidence and went home to discuss it with her adult daughter. Not only did Ms. Hester discuss the testimony with her daughter, the daughter engaged in the conversation with Ms. Hester about the evidence being admitted at trial. Courts in this state have long held that actions such as Ms. Hester's are prejudicial and warrant a new trial. See e.g., Dawson v. State, 710 So.2d 472 (Ala. 1997); Reed v. State, 547 So.2d 596 (Ala. 1989); Ex parte Dobyne, 805 So.2d 763 (Ala.2001); Ex parte Apicella, 809 So.2d 865 (Ala.2001); Brown v. State, 807 So.2d 1 (Ala.2001) [sic]. The aforementioned jury misconduct denied Mr. Duncan the right to a fair and impartial jury, as protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution."
(C.R. 100-02.)
In its order dismissing the petition, the circuit court found as follows:
"Duncan makes two claims: (1) that `several jurors failed to disclose critical evidence, despite unambiguous questioning,' and (2) that `the jury looked beyond the evidence and testimony at trial.' (Petition at p. 47) Duncan's only attempt to support these allegations is to contend that juror Annie Hester discussed the evidence with her daughter during the trial. Duncan fails, however, to proffer any facts in his petition that would establish this allegation, even if true, could not have been discovered by trial counsel in time to raise it in a motion for new trial. See Ex parte Pierce, 851 So.2d 606, 614 (Ala.2000) (hold[ing] that the preclusionary ground[s] of Rule 32.2 apply to allegations of juror misconduct).
". . . The Court finds that these allegations are procedurally barred, because they could have been but were not raised at trial and because they could have been but were not raised on appeal. Rule 32.2(a)(3) and (5)."
(C.R. 60-61.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief in this regard.

VI.
The appellant's sixth argument is that the State did not present sufficient evidence to support his convictions for capital murder because it allegedly did not establish that he had the requisite intent to kill. However, he raised this argument in his motion for a new trial and on direct appeal, and this court addressed and rejected it on direct appeal. See Duncan, 827 So.2d at 846-49. Therefore, it is precluded pursuant to Rule 32.2(a)(2) and (4), Ala. R.Crim. P.

VII.
The appellant's seventh argument is that the trial court erred in not allowing argument outside of the presence of the jury regarding his objections to the State displaying photographs while examining a witness. His objections were based on the fact that the prosecutor was showing photographs to the jury before they were admitted into evidence and that one of the photographs had been enlarged. He raised parts of this claim at trial and on *281 direct appeal, and this court addressed parts of this claim at trial and on direct appeal. Therefore, this claim is precluded pursuant to the provisions of Rule 32.2(a), Ala. R.Crim. P.

VIII.
The appellant's eighth argument is that the sentence of death is disproportionate to his character, the circumstances of the offense, the treatment of a codefendant, and his age at the time of the offense. Based on Roper, as set forth above, we must remand this case to the circuit court for resentencing. Therefore, this argument is moot.

IX.
The appellant's ninth argument is that the trial court refused to consider nonstatutory mitigating circumstances in sentencing him to death. Based on Roper, as set forth above, we must remand this case to the circuit court for resentencing. Therefore, this argument is moot.

X.
The appellant's tenth argument is that the State improperly used peremptory strikes to remove blacks from the jury. This claim is precluded because it was raised and addressed at trial and on direct appeal. See Rule 32.2(a)(2) and (4), Ala. R.Crim. P.; Duncan, 827 So.2d at 855-57.

XI.
The appellant's eleventh argument is that, during his closing argument, the prosecutor improperly commented on his decision not to testify, and the trial court improperly refused to give a proper curative instruction. This claim is precluded because it was raised and addressed at trial and on direct appeal. See Rule 32.2(a)(2) and (4), Ala. R.Crim. P.; Duncan, 827 So.2d at 858-60.

XII.
The appellant's twelfth argument is that Alabama's death penalty scheme is unconstitutional pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Based on Roper, as set forth above, we must remand this case to the circuit court for resentencing. Therefore, this argument is moot.

XIII.
Finally, the appellant argues that his custodial statements were improperly admitted at trial. However, this claim is precluded pursuant to the provisions of Rule 32.2(a), Ala. R.Crim. P.
With the exception of his claims concerning the penalty phase of his trial, which we need not review, as set forth above, the appellant's claims were obviously precluded, insufficiently pled, and/or without merit. Therefore, the circuit court properly summarily dismissed those claims, see Rule 32.7(d), Ala. R.Crim. P., and we affirm the circuit court's judgment as to those claims. However, based on Roper, we are compelled to remand this case to the circuit court with instructions that that court set aside the appellant's death sentence and resentence him to imprisonment for life without the possibility of parole. The circuit court shall take all necessary action to make sure that the circuit clerk makes due return to this court at the earliest possible time and no later than 35 days after the release of this opinion.
AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.
McMILLAN, P.J., and COBB and WISE, JJ., concur; SHAW, J., concurs in the rationale in part and concurs in the result, with opinion.
*282 SHAW, Judge, concurring in the rationale in part and concurring in the result.
Because I disagree with the blanket assertion in the main opinion that a finding of no plain error on direct appeal necessarily precludes a finding of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), I concur in the result as to any parts of the main opinion so holding. See Taylor v. State, [Ms. 02-0706, August 27, 2004] ___ So.2d ___ (Ala.Crim.App.2004) (Shaw, J., concurring in part and dissenting in part). As for the remainder of the opinion, I concur.

On Return to Remand
BASCHAB, Judge.
On March 31, 2005, in compliance with this court's opinion of March 18, 2005, the trial court set aside the appellant's death sentence and sentenced him to imprisonment for life without the possibility of parole. Because the trial court has complied with our instructions, we affirm that court's judgment.
AFFIRMED.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
NOTES
[1] We also note that it does not appear that the appellant ever requested discovery of the district attorney's files. Therefore, any challenge in that regard is not properly before this court.